Staunton.

PENNYBACKER v. SWITZER.

Absent, *Moncure*, P.

A bill is filed by a guardian in a county court in the year 1847, when the court had jurisdiction of the subject, for the sale of real estate in which his ward had an interest, and which was sold under its decree. Afterwards—to-wit: in 1863—the case being still on the docket of the court—when the statute conferring such jurisdiction on the county court had been repealed, except as to causes then pending, which the court might "hear and determine," the same court, in the same cause, decreed the sale of other real estate in which the ward was interested, which was likewise sold. The papers in the cause were destroyed during the war, and there are no means of ascertaining the contents of the bill, or the nature and extent of the relief prayed for. In 1868, the ward, having attained to legal age, brings a suit for the sale of the same real estate that was sold under the decree of 1863, in the original suit. The purchaser of this property, who is made one of the defendants, files his answer and a cross-bill asserting his right to the property as a complete purchaser under the said decree. The plaintiff, in his answer to the cross-bill, assails this decree, mainly on two grounds—to-wit: 1. That the county court had no jurisdiction to make the decree. 2. That the sale of the property, under this decree, was no part of the object of the bill in the orignal suit. HELD :

1. That the repeal of the statute did not affect the jurisdiction of county courts as to causes *then pending ;* that it remained precisely as though no change had taken place in the law.

2. That the adjudications of the county court cannot be called in question in any collateral proceeding, however erroneous they may be. The errors and irregularities, if any exist, are to be corrected by some direct proceeding either before the same court to set them aside, or in an appellate court.

3. That the maxim *omnia præsumuntur rite esse acta* applies to sustain the decrees of a court, rather than forced presumptions to defeat them.

This was a suit in equity in the circuit court of Rockingham county, brought in 1868, by J. Edmund Pennybacker against D. Morgan Switzer, Joseph S. Pennybacker, Sr., and Sarah A. Pennybacker, claiming that the said J. Edmund Pennybacker is entitled in fee simple, subject to the dower right of his mother, the said Sarah A. Pennybacker, to one-third of a lot, about one-third of an acre, with a stone dwelling-house, a frame office and other buildings thereon, in the town of Harrisonburg, in said county of Rockingham, in the occupancy of said Switzer. The plaintiff alleges in his bill that Isaac S. Pennybacker, his father, died about the year 1848, intestate, possessed of this lot, "leaving as his only heirs-at-law his widow, Sarah A. Pennybacker, and three infant children—John D., Isaac S. and your orator J. Edmund Pennybacker—to whom said lot of land descended"; that the said Sarah A. Pennybacker was entitled to dower therein, and that the said John D. and Isaac S. Pennybacker, Jr., as they respectively attained to legal age, conveyed their interest in said property to their mother, the said Sarah A. Pennybacker, the deeds for which were duly recorded, but believed to have been destroyed at the burning of records of Rockingham county court by the Federal troops under General Hunter in the year 1864; that said Sarah A. Pennybacker was the guardian of the plaintiff, and in the year 1861 intermarried with Joseph S. Pennybacker, Sr., who thereupon became, in right of his wife, guardian of the plaintiff, and so continued until the 29th day of April, 1865, when the plaintiff arrived to legal age; that said Sarah A. Pennybacker was entitled to the said property other than the plaintiff's interest, until she and her husband sold the same to the said Switzer, in the year 1863, since which time the said Switzer has occupied said property exclusively, and still continues to occupy it; that the plaintiff has never sold his interest in said property, or authorized its sale, and he is entitled in fee simple.

to one-third thereof, and to rents for five years (subject to the dower right aforesaid); that the said lot of land is worth not less than $5,000; that it is not susceptible of partition, and that the interest of all parties will be promoted by a sale thereof and the distribution of the proceeds among the parties according to their respective interests therein. The bill prays for a sale of the property and division of proceeds, an account of the rents and profits, and for general relief.

The defendant Switzer answered the bill. He admits that Isaac S. Pennybacker was seized of the property, and that the property is in his (the defendant's) possession; that his heirs-at-law were the widow and three children of said Isaac S. Pennybacker, as set forth in the complainant's bill; that the widow was entitled to dower in the property in question, and that John D. and Isaac S. Pennybacker, Jr., after they had arrived at full age, conveyed their interests in said property to their mother, Sarah A. Pennybacker, the widow of the said Isaac S. Pennybacker, deceased; that in August, 1860, the mother of complainant qualified as his guardian; that she married Joseph S. Pennybacker, Sr.; that he does not admit or deny the age of the complainant, as he does not know, nor does he admit that complainant is entitled to one-third of said property, subject to the dower right, or to the rents therefor for any time. He admits that said Sarah A. Pennybacker and Joseph S. Pennybacker, Sr., her husband, together with L. W. Gambill, as commissioner and trustee, conveyed the property to the defendant in the year 1863; but as the complainant has failed to set forth all the circumstances, defendant, in order that the court may be in possession of all the facts and be enabled to render an equitable decree between the parties, will now state them as far as he can, and which he does as follows: "Isaac S. Pennybacker, the father of the complainant, departed this life early in the year 1847, and on

the 15th of February, 1847, administration of the personal estate of the said Isaac S. Pennybacker, deceased, was granted to Allen C. Bryan, by the county court of Rockingham county, and the same court, on the 17th of May, 1847, appointed Anderson M. Newman guardian of the infant children of said Isaac S. Pennybacker, deceased, and on the 7th of August, 1847, the said A. M. Newman instituted a chancery suit in said county court of Rockingham against the widow and infant children of the said Isaac S. Pennybacker. On the 24th of February, 1848, a decree was rendered in said chancery suit, directing the sale of a tract of land in Shenandoah county, belonging to the estate of the said Isaac S. Pennybacker, deceased, and appointing Samuel H. Pennybacker and Allen C. Bryan the commissioners, and on the 19th June, 1848, a decree was entered confirming the sale made by said commissioners of the Shenandoah land. On the 23d of May, 1849, the money arising from the sale of the Shenandoah land was directed to be paid to A. M. Newman, and on the 22d August, 1849, so much money was decreed to the widow as interest on one-third in lieu of dower in said Shenandoah land. The original papers in the chancery suit of A. M. Newman, guardian, against Sarah A. Pennybacker and the infant children of Isaac S. Pennybacker, deceased, having been lost or destroyed, respondent herewith files, as part of his answer, copies of said orders and decrees taken from the record books of the county court of Rockingham county (Exhibit A). The papers and records of this case having been lost or destroyed, respondent is unable to find any other orders or decrees in the case of A. M. Newman, guardian v. Sarah A. Pennybacker, &c., until the time respondent became the purchaser of the property now in controversy, when he, being satisfied that a good title could be made, became the purchaser at the price of $4,000; and on the 20th day of April, 1863, the county court of Rockingham county, by a

Pennybacker v. Switzer.

·decree rendered in the said case of A. M. Newman, guardian v. Sarah A. Pennybacker and others, confirmed the sale and appointed L. W. Gambill as commissioner and trustee to unite with Sarah A. Pennybacker and Joseph S. Pennybacker in conveying said property to respondent. A copy of said deed is herewith filed, marked B, as part of this answer. Said deed, having been duly signed and ·acknowledged, was duly admitted to record, and the original record' having been destroyed has the second time been admitted to record. Respondent does not admit the property to be worth $5,000, and at the time of purchase, at the price of $4,000, the complainant, although then an infant, boasted of the high price that had been paid. Respondent ·does not admit that complainant is entitled, as against him, for any rents, or that the property is bound for the back rents, and that he believing when he purchased, and as he still believes, that he had a good title, has put valuable improvements on the property ; and having purchased in good faith and obtained a title, according to the established laws of Virginia, asks that he may not suffer through the loss of the records, and be compelled to pay again for property which has been once paid for; and that if the plaintiff is entitled to recover anything, he may do so from the proper parties and not from respondent."

At the August rules, 1873, the defendant D. M. Switzer filed a cross-bill in the cause against the said J. E. Pennybacker, in which, after referring to the bill of complaint agaist him, and the facts set forth in his answer thereto, and stating that the said Pennybacker in his suit had denied the jurisdiction of the county court of Rockingham in 1863 to confirm the sale of the property in question, alleges that the decree confirming the sale to him was rendered in the suit instituted in 1847, in the name of A. M. Newman, guardian, against Sarah A. Pennybacker and others, at which time suits for the sale of infant's lands

might be brought in the county court (Sup. to R. C. of 1819, ch. 166, p. 223); and although this law was changed in 1849, yet the jurisdiction of the county court was still expressly retained over such cases as were then pending. (Code of 1849, ch. 157, § 3). That the papers in said cause were destroyed by Hunter's army in 1864, and therefore he could not show the different steps that were taken in the said cause; but, in the absence of proof to the contrary, it must be presumed that everything was done in the cause that should have been done, because it is not proper to presume that a court of record erred.

The defendant J. E. Pennybacker to the cross bill demurred to the same and filed his answer thereto. He states that he believes it to be true that in the year 1847 A. M. Newman, guardian of himself and the other children of the late Isaac S. Pennybacker, did file a bill in chancery in the county court of Rockingham for the sale of a tract of land of which said Isaac S. Pennybacker died seized, known as the Forge farm, which land was sold by Allen C. Bryan and Samuel H. Pennybacker, as commissioners appointed for that purpose, in 1848; but he denies that the house and lot in Harrisonburg, which was the homestead of said Isaac S. Pennybacker, and is now the subject of this suit, was embraced in said suit brought in 1847, or sought in said suit to be sold. The object of said suit was to sell the farm, not the home of the family. That it is true, as the papers show, that in 1863 the property in Harrisonburg was sold by said Joseph S. Pennybacker and wife to said D. M. Switzer for $4,000 in Confederate States treasury notes, and the whole amount at once paid over to said Pennybacker without the consent of respondent, and, he believes, without the consent of his mother, whose interest in the property had been settled upon her for her separate use; that this, as respondent understands, was a private sale and may have been confirmed by the county court, but

he insists that the sale and confirmation thereof were
wholly null and void, and in no way binding on him. He
denies the jurisdiction of the county court to decree a sale
of an infant's land in 1863, and states that if the original
suit of Newman, guardian v. S. A. Pennybacker had not long
before terminated, it is fair to presume it had; that there
was no right in 1863 to file an amended bill for the pur-
pose of introducing new matter into that suit; and if such
had been done, it would have been a new suit as to the
house and lot; and for that reason alone it would have been
improper. That it would have been a fraud upon the law
to have sought to accomplish by an amended bill a result
forbidden by filing an original bill, and denied the power
of the county court in 1863 to make or confirm a sale under
an amended bill filed in 1863, if such a bill could have
been filed. He believed it to be true that the original
papers in said suit of Newman guardian, v. S. A. Penny-
backer had been destroyed, but contended that this does
not give the complainant a right to presume anything in
favor of the defence he has set up, and that the court can-
not presume that an amended bill was filed and depositions
taken against an infant, or any one else.

A number of depositions were taken in the cause, and on
the 3d day of February, 1874, the cause came on to be heard
upon the bill, taken for confessed as to the defendants
Joseph S. Pennybacker, Sr., and Sarah A. Pennybacker, the
exhibits, the answer of the defendant D. M. Switzer, with
general replications thereto; the cross-bill of the defendant
the said Switzer, filed by leave of the court; the answer of
the complainant J. Edmund Pennybacker to said cross-
bill, and the depositions of witnesses, and was argued by
counsel. Whereupon, the court, being of opinion that the
complainant was entitled in fee simple to one-third of the
lot of land and the buildings thereon, in the town of Harri-
sonburg, subject to the dower interest of his mother, Sarah

A. Pennybacker, in said third, and that the defendant D. M. Switzer was entitled to the residue of said lot and buildings, including the dower interest in the whole of said property, referred the cause to one of the commissioners of the court to take an account of the rents and profits of said property since the sale thereof to the defendant D. M. Switzer, in the year 1863, and also of the permanent improvements made thereon by the said defendant during the same time, and to inquire and report whether said property was susceptible of partition in any of the modes provided by the statute; and on motion of the defendant D. M. Switzer, the commissioner was required to ascertain and report the value of said house and lot, and the value of the interest of said J. E. Pennybacker therein.

At the May term, 1876, leave was given the defendant Switzer to file his petition for a rehearing of the cause; which petition was filed on the 16th day of June, 1876; on consideration whereof the rehearing was granted.

On the 13th day of March, 1887, the cause was reheard by the said circuit court, when the following decree was entered:

"These causes came on to be heard again this 13th day of March, 1877, upon the papers heretofore read, former orders and decrees, and the petition for rehearing and answer to the cross-bill, which is, by consent of parties, read as an answer to said petition, replication thereto, and upon the report of Commissioner Daingerfield, filed June 5th, 1876, and being again argued by counsel; upon consideration whereof, it appearing to the court that the county court of this county did have jurisdiction of the matters complained of, and had a right to grant the relief and objects and purposes sought and prayed for in the original cause of Anderson M. Newman, guardian for the infant heirs of Isaac S. Pennybacker, deceased, against Sarah A. Pennybacker, widow of Isaac S. Pennybacker, and others.

mentioned in the bill and proceedings in this cause when instituted in 1848; and it also appearing to the court that the house and lot in Harrisonburg, Va., in the bill and proceedings in this cause mentioned, was sold, and the sale thereof confirmed by a decree of the said county court rendered in the said cause of Newman, guardian, &c. against Sarah A. Pennybacker, &c., on the 20th day of April, 1863, the purchase money paid by the said D. M. Switzer, and a deed made to him for said house and lot in due form of law on the 16th day of July, 1863, by J. S. Pennybacker, Sarah A. Pennybacker, and by L. W. Gambill as trustee for Sarah A. Pennybacker and as a commissioner duly appointed by the said county court and acting in conformity with said decree confirming said sale, and that it was duly admitted to record on the same day. The court must presume that the county court had taken all necessary steps to mature said cause for hearing, and that all necessary forms of law and legal proofs and requirements have been furnished or complied with to warrant the decree so rendered, and more especially so in view of the fact that nearly the whole record of said cause has been destroyed by fire, with the greater part of the other records of said court, since the rendition of said decree confirming said sale. And the court is further of opinion, that if it were conceded that there was error in said decree of the said county court confirming said sale, or in any of the proceedings in said cause of Newman, guardian, &c. v. Sarah A. Pennybacker, &c., such error or errors cannot be corrected in this collateral way as designed in the said first-named cause of J. E. Pennybacker v. D. M. Switzer. It is further adjudged, ordered and decreed, that the decree rendered in these causes by this court on the 3d day of February, 1874, be set aside, and that said first-named cause of J. Edmund Pennybacker v. D. M. Switzer, &c., be dismissed, and that the said D. M. Switzer, the defendant in the said first-named

cause and complainant in the said second-named cause, recover his costs by him in said causes expended."

From this decree the said J. Edmund Pennybacker applied to a judge of this court for an appeal; which was awarded.

*W. B. Compton*, for appellant.

*J. S. Harnsberger* and *G. W. Berlin*, for appellee.

STAPLES, J., delivered the opinion of the court.

Prior to the revised statutes of 1849 and 50 the county courts were clothed with authority to decree the sale of infants' land upon the application of the guardian, either where it was made to appear that the interest of the infant would be promoted by a sale and the investment of the proceeds, or where it was shown in such suit it would be for the interest of the infant to have the land sold and the proceeds applied to the ancestor's debts in order that the slaves might be exempt from such liability. (Sup. to R. C., ch. 166, p. 223–4).

The records of the present suit were destroyed by the Federal forces under General Hunter during their invasion of the Valley in the year 1864. There is enough, however, to show that the bill was filed by the guardian in the county court in the year 1847 for the sale of his ward's real estate under the provision of the statute just alluded to. It does not appear whether the sale under the decree of 1848 was made for the payment of the ancestor's debts, or upon the ground that the interest of the ward would be promoted by a sale and the investment of the proceeds in some other security. The decree merely recites that the " court was satisfied from the evidence that the interest of the infant defendants manifestly requires the sale of

the land." It is possible that the bill was framed with both objects, or that it was made to appear in the progress of the suit that a sale of the real estate was necessary for the payment of debts and for the exoneration of the intestate's slaves. It is in proof that the intestate was indebted at the time of his death to the amount of two or three thousand dollars, and it is most probable these debts were paid out of the proceeds of the land sales. At all events, the Shenandoah lands were sold under the decree of 1848—the sale was duly confirmed and the title conveyed to the purchaser or purchasers. No question is made or has been raised as to the validity of these sales or as to the title so conveyed. The property involved in the present controversy consists of a house and lot in the town of Harrisonburg. It was sold under a decree in the same suit rendered in the year 1863—was purchased by the appellee at the price of $4,000 in Confederate money, which was paid to a commissioner or receiver of the court and a deed of conveyance duly executed to the purchaser.

The validity of this decree and sale is controverted by the appellant, who was then an infant, upon several grounds. The main one of which is that by the revisal of 1849 and 1850 the jurisdiction of the county courts was taken away in suits by guardians for the sale of infants' lands, and was thereafter vested exclusively in the circuit courts, and consequently the decree of 1863 was *coram non judice*, and therefore void. The general statutes divesting the jurisdiction of the county courts in this class of cases were, however, subject to an important qualification or proviso, found in the 3d section, chapter 157, Code of 1849, which declares that "the county and corporation courts shall have jurisdiction to hear and *determine* all cases at law or in chancery which *were then pending* in these courts except criminal cases."

It has been argued, however, that this provision has no

just application to the present case, because the sole object of the suit by the guardian was the sale of the Shenandoah lands, and that object was fully accomplished and the case practically terminated by the decree of 1848, and the proceedings thereunder, and after the repeal of the statute giving the county courts jurisdiction of suits by guardians. It was not competent to make a new case or to obtain relief not contemplated by the original bill. We do not know, however, that a new case was made, nor do we know the nature and extent of the relief prayed for in that bill. It has been destroyed along with the other records, and we have no means of ascertaining its contents. If it was properly framed it set forth all the real and personal estate of which the intestate died possessed. It may have asked for a sale of the entire realty, and the parties may have become satisfied that a sale of part only was then necessary. But suppose the bill prayed for the sale of the Shenandoah lands, surely it would have been important to amend and ask for a sale of any other estate of which the decedent died possessed. If a creditor or guardian files a bill praying for the sale of one tract, and it appears in the progress of the cause that a sale of other land is proper, cannot the bill be amended accordingly without being obnoxious to the criticism of making a new case? So far from it, the amendment is directly in the scope of the original bill, and in innumerable instances is essential to the great purpose of effecting complete relief and putting an end to litigation. When the legislature authorized the county courts to hear and determine all pending suits its manifest design was to enable that court to make such determination as was essential to the purposes of justice and to do whatever might be properly and legitimately done in a pending cause by any court, under the forms and rules of proceeding recognized by the equity courts. If this were not so it is obvious that the court

Pennybacker v. Switzer.

must often stop half way in its measures of relief, and the parties turned around to a new suit in the circuit court, to commence precisely where they left off in the county court. Such a course of proceeding could only result in great confusion and useless expense and delay.

It seems to us that the true construction of the statute is that as to pending suits the jurisdiction of the county courts remained precisely as though no change had taken place in the law. This seems to have been the construction then given to it, and it is highly probable that numerous titles all over the State are derived from decrees thus obtained in pending suits.

In what manner the question of the sale of the property in controversy was brought to the attention of the county court in 1863, we have no means of ascertaining. The universal rule which presumes it was rightly done, applies, as will be hereafter seen, as well to that court as to any other court. We are as much warranted in making that presumption in face of the decree and sale of 1863, as the decree and sales of 1848. In neither case have we any proof that the necessary steps were taken to warrant the sale of the appellant's real estate.

It has been said, again, that the cause was retained on the docket for thirteen years, and the conclusion is sought to be deduced that it was practically an ended case, and incapable of being revived. Every one at all familiar with the history of the old county courts of Virginia is well aware of the long-continued pendency of cases on the dockets of those courts, without even a motion or order for years, except continuance. Under our statute, such cases so pending for more than seven years may be struck from the docket, capable, however, of being reinstated, on motion, within a year. Code of 1849, chap. 174, § 7. But until the order of dismissal is actually entered, the case is considered as still pending in court for all purposes of litigation and relief as any other pending suit.

There is nothing—literally nothing—to show that the suit in which the decree of 1863 was rendered was ever dismissed or stricken from the docket. Certainly neither the counsel nor the court so regarded it. The attorney who obtained that decree was the same who filed the bill and obtained the decree of 1848. He was the uncle of appellant, and is proved to have been a lawyer of ability and learning in his profession. The presiding justice of the court, when the decree was entered, was also an uncle of the appellant, and was the guardian who filed the bill in the case. That the decree was not entered without consideration, is apparent from the fact that the court refused at one time to decree a sale because the case was not then fully prepared, and it was not until the next term the cause was deemed ready for a hearing. It further appears that Mr. John C. Woodson, a lawyer noted for his accuracy, and who was also connected by marriage with the appellant, prepared the deed to the appellee. His statement is, that in so preparing it he had the "original papers before him, or a copy of the decree of 1863—most likely the papers— and that the facts are correctly recited in the deed." The facts there stated, so far as they go, corroborate every view here taken.

Much reliance is placed on the fact that Mr. Newman, who was guardian in 1847 and 1848, and who filed the bill, had ceased to be guardian in 1863, when the decree was entered; and it is insisted there is nothing to show any revival in the name of the succeeding guardian. Admit that Mr. Newman had in fact resigned his office, are we to suppose that neither he, as presiding justice, nor Mr. Bryan, the counsel, nor Mr. Woodson, who prepared the deed, paid any attention to the fact, and that they were willing to have a doubtful title palmed upon an innocent purchaser? We ought to apply the maxim "*Omnia præsumuntur rite esse acta*" to sustain the decrees of a court, rather than by forced presumptions to defeat them.

But let it be conceded that the court proceeded in the name of a former guardian, after he had resigned his office, does that fact invalidate the decree and the title of an innocent purchaser in a collateral suit? If it does, then the most solemn adjudication of a court may be rendered void anywhere, at any time, upon the loose statement of witnesses that a party to a cause had died, become convict, or had resigned his office previous to the rendition of the decree or judgment which is assailed. The establishment of such a doctrine would destroy all fath in judicial proceedings; for if no notice of the fact appears upon the record it is impossible that third persons could know of the resignation or removal of the guardian or other fiduciary. The rule is well settled, as it will be hereafter seen, that the judgment of a court of record cannot be collaterally assailed except for errors affecting its jurisdiction.

It has been argued that this does not apply to the present case, because the county courts of Virginia in 1863 were courts of inferior and limited jurisdiction. This position is in conflict with the decisions of this court and of the supreme court of the United States in various cases. It is very true that these courts were courts of inferior jurisdiction, but only inferior in the sense of any other court whose judgments may be reversed on appeal or writ or error. With respect to all powers vested in them, whether exercised according to the course of the common law or by statute, they were courts of general jurisdiction to the same extent as the circuit courts. In both instances the same presumption arises with respect to the conclusiveness of all the proceedings and judgments of the court. Upon this subject, we refer to the case of *Harvey* v. *Tyler*, 2 Wall. 328, and *Ballard et als.* v. *Thomas & Ammon*, 19 Gratt. 14. In the latter case it was held that an order of the county court laying a levy is an adjudication of the facts necessary to authorize the proceeding, and that adjudication

·cannot be called in question in any collateral proceeding however erroneous it may be. See also *Lancaster* v. *Wilson*, 27 Gratt. 629.

In the case of *Thompson* v. *Tolmie*, 2 Peters 157, a decree for the sale of the estate of three orphans was assailed in a collateral suit as invalid, on various grounds. The supreme court said the counsel for the defendant in error have in the argument considered the proceedings open to the same examination and objection as they would be in an appellate court on a direct proceeding to bring them under review. This is not the light in which we view the question now before us. The general and well settled rule of law is that when the proceedings are collaterally drawn in question and it appears upon the face of them that the subject matter was within the jurisdiction of the court, they are voidable only. The errors and irregularities of any court are to be corrected by some direct proceeding either before the same court to set set them aside, or in an appellate court.

One of the leading cases on this subject is that of *Voorhees* v. *Bank of United States*, 10 Peters 449, in which the validity of a sale under an attachment in a county court was collaterally drawn in question. The errors assigned in the proceedings were numerous and palpable. The counsel in that case argued that as the jurisdiction of the court was statutory and special, the record must show affirmatively the evidence of a compliance with the terms prescribed by law in making the sale. The supreme court said that although the proceeding was statutory it was the judgment of a court of competent jurisdiction, and there is no better settled principle of law than that the act of such a court shall be presumed to have been rightly done till the contrary appears. Every matter adjudicated becomes a part of the record, which henceforth proves itself without referring to the evidence on which it has been ad-

judged; and even if there be the most palpable errors in the proceedings, amounting to a total failure to comply with the requirement of the statute, they cannot in another suit affect the validity of the decree or the title unless they be such as show a want of jurisdiction in the court.

In *Cornett* v. *Williams*, 20 Wall. 249, Mr. Justice Miller said: "The settled rule of law is, that jurisdiction having attached in the original cause, everything done within the power of that jurisdiction, when collaterally questioned, is to be held conclusive of the right of the parties unless impeached for fraud. Every intendment is made to support the proceedings; it is regarded as if it were regular in all things, and irreversible for error. "These remarks," said he, "apply to the order of sale here in question. The county court had the power to make it, and did make it. It is presumed to have been properly made; and the question of its propriety is not open to examination upon the trial in the circuit court." See *Durrett* v. *Davis, Guard'n, and als.*, 24 Gratt. 302. Every case we have cited, whether in this or the supreme court of the United States, is one of statutory jurisdiction conferred upon county or orphans courts, and they leave not a shadow of doubt as to the rule now recognized by the highest courts in this country. They constitute a complete answer to every objection urged by the appellant's counsel, and to every error, real or imaginary, found in the proceedings or the decree of the county court under which the appellant's land was sold. There is no suggestion of fraud, bad faith, or unfair dealing on the part of any one. The character of the parties, the high respectability of the counsel engaged, utterly preclude any such suspicion. The appellee was an innocent purchaser, paying what was then regarded as the value of the property, and there is no doubt the sale was considered as a proper and beneficial one. If subsequent events have proved it otherwise, the consequences ought not to be visited upon

the appellee. The conduct of General Hunter, in his raid upon the Valley of Virginia, is now a matter of history. The records of the courts were destroyed at every step of his disastrous progress, and with them the only documentary proof of innumerable titles under judicial sales; and if this court shall establish the rule that any sale of infants' lands during the war may be set aside, unless all the proceedings can be shown to be regular, indescribable mischief, loss and confusion will be the result, not only in the Valley, but in many parts of the State.

Before dismissing this part of the case, it is proper to say, the law recognizes no distinction between a decree against an infant and a decree against an adult. And, therefore, it is an infant can impeach a decree only upon the grounds which would invalidate it in the case of another person—such as fraud, collusion, or error. The mere fact of infancy confers in such case no special rights or privileges. And, therefore, it is that the same general presumptions and inferences which apply in favor of decrees against adults, apply in favor of decrees where the rights of the infants are involved. *Zirkle* v. *McCue and al.* 26 Gratt. 517.

It only remains to notice the objection that no bond was required of the commissioner or receiver before the purchase money was paid—and no order was made or security given for the investment of the proceeds as required by the statute—the result of all which is the proceeds of sale were squandered and lost to the appellant. Here, again, we are groping in the dark, for literally we have nothing before us to show what orders or decrees were entered with respect to the purchase money, or whether the proper bond was given by the receiver according to the requirements of the statute.

If the rules of law based upon presumptions of the regularity of the proceedings have any force at all, they must apply here as elsewhere. We must, of course, presume,

Pennybacker v. Switzer.

until the contrary is shown, that the court did its duty in requiring an observance of a plain provision of the statute.

But let it be admitted that no sufficient bond was given by the receiver or commssioner, and that no order was made by the court for the investment of the proceeds of sale; and further, that the purchaser is bound at his peril to see to the proper application of the purchase money for the benefit of the infant; let all this be conceded and the concession would not invalidate the decree of sale or the title of the purchaser.

If the receiver did not give the proper bond, the payment to him was improper, and the property would still be bound in the hands of the appellee for the purchase money upon proceedings had in due time in the original suit. The same is true with respect to the application and investment of the purchase money—matters necessarily occurring after the confirmation of the sale. Whatever rights and remedies the appellant may have had ought to have been asserted in the original suit. As the failure of the county court to secure the purchase money, if such was the case, cannot render the decree of sale void, it cannot be the subject of inquiry and investigation in this proceeding. After what has been said, it is perhaps needless to remark that this is not a bill or petition having for its object the reversal of the decree of 1863 by proper proceedings in that suit, but an original, independent bill, filed in the circuit court by the appellant, asking simply for a partition of the property in controversy. It contains no charge of fraud or collusion against the appellee—it does not even refer to the suit in the county court or to the decree and sale made therein under which the appellee claims title. See *Harvey* v. *Holmes*, 20 Gratt. 1. For the reasons already stated, we think such a bill cannot be sustained and that the decree of the circuit court must be affirmed.

DECREE AFFIRMED.