𝔚𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

CHESAPEAKE & WESTERN RAILROAD COMPANY
v.
WASHINGTON, CINCINNATI & ST. LOUIS RAILWAY COMPANY.

Absent, Keith, P.

NOVEMBER 21, 1901.

1. JUDGMENTS—*Collateral Attack—Notice.*—In a collateral attack upon a judgment of a court of general jurisdiction, the recital in the judgment that the defendant was duly served with notice as required by law is conclusive of that fact, unless there is something in the record which plainly shows that the defendant did not have notice, or the character of the proceeding is such as to make it necessary that the evidence of notice should affirmatively appear in the record.

2. CONDEMNATION PROCEEDINGS—*Collateral Attack—Notice.*—In a collateral attack upon a condemnation proceeding before a county court it is not necessary to the validity of its judgment that it should appear on the face of the proceedings how the defendant was notified. It is sufficient that it appears that the defendant was duly notified.

3. CONDEMNATION PROCEEDINGS—*Effort to Settle—Notice—Sufficiency.*—In a condemnation proceeding it is not necessary that it should appear on the face of the proceedings that any attempt was made by the plaintiff to purchase the land sought to be condemned. The proceeding is by motion upon notice, and the notice is viewed with great indulgence by the courts, as it is presumed to be act of the parties, and not of lawyers.

4. COUNTY COURTS—*Jurisdiction—Judgments—Collateral Attack.*—County courts, with respect to purely judicial powers, are courts of general jurisdiction, and their judgments are presumed to be right, and cannot be attacked collaterally, however erroneous they may be.

5. CONDEMNATION PROCEEDINGS — *Questions Concluded by—Collateral*

*Attack—Railroads.*—As one railroad company may under some circumstances condemn the land of another for its purpose, the right to so condemn is determined by the adjudication in the condemnation proceedings, and such determination cannot be collaterally attacked. The judgment in the condemnation proceedings concludes all questions that could have been therein raised or determined.

6. CONDEMNATION PROCEEDINGS.—One of the objects of the summary proceedings to condemn land by an internal improvement company is to enable it to acquire title to the land and proceed with its work at once, and leave the parties to litigate their rights over the fund paid into court, without in any way affecting the title acquired in the manner required by the statute.

7. CONDEMNATION PROCEEDINGS—*What May be Contested.*—In a condemnation proceeding the land-owner may contest the corporate existence of the plaintiff, or its authority to condemn the particular property for its use, or its compliance with conditions which are prerequisites to its right to condemn. The law favors the settlement in one suit of all matters arising out of one controversy.

8. STARE DECISIS—*Opinion not Concurred In.*—This court is not bound by a prior opinion delivered in another case, where it appears that the court was composed of four judges, two of whom concurred only in results, and one dissented. *Alexandria, &c. R. Co.* v. *Alexandria, &c. R. Co.*, 75 Va. 780, disapproved.

9. CORPORATIONS—*Corporate Existence—How Shown.*—The corporate existence of a corporation may be shown by the introduction of its charter, and of the minute book of the corporation showing organization under the charter.

Error to a judgment of the Circuit Court of Rockingham county, rendered at its April term, 1901, in an action of ejectment wherein the defendant in error was the plaintiff and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Alexander & Green, Edgar Madden,* and *Sipe & Harris,* for the plaintiff in error.

*Conrad Kownslar, John E. Roller, D. O. Dechert, Marshall McCormick,* and *U. Lawrence Boyce,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Rockingham county in an action of ejectment brought by the Washington, Cincinnati and St. Louis Railroad Company against the Chesapeake and Western Railroad Company.

During the progress of the trial, which resulted in a verdict and judgment in favor of the plaintiff, numerous exceptions to the rulings of the court were taken by the defendant, which are the basis of the errors assigned here.

Among these was the refusal of the court to permit the defendant to introduce in evidence certain condemnation proceedings had in the County Court of that county, by which the defendant claimed to have obtained title to and the right to the possession of the land in controversy. The grounds of objection to this evidence were:

"First. That it does not appear upon the face of the record that the County Court of Rockingham county had jurisdiction to entertain the motion of the Chesapeake and Western Railroad Company for the condemnation of the property in question; it not appearing on the face of the proceedings that any attempt was made to purchase the land, or had been made to agree with the owners of the land as to the purchase price; and

"Second. For the further reason that the general law and the charter of the Chesapeake and Shendun and Western Railroad Company (under which charter the Chesapeake and Western Railroad Company was organized), did not by express terms or by necessary implication, grant to said company authority to apply to the County Court for the condemnation of the property, franchises, and rights of the plaintiff company; or, by any other method, to take the same."

In the briefs and oral argument here it is insisted that these proceedings were not admissible for an additional reason, viz.,

that they were had without notice to the plaintiff (the defendant in error). This last objection will be first considered.

The proceedings to condemn were had under chapter 46 of the Code. Section 1074 of the Code provides that "If the president and directors of a company incorporated for a work of internal improvement * * * * * * cannot agree on the terms of purchase with those entitled to lands wanted for the purposes of such company, * * * * * * * * five disinterested freeholders shall be appointed by the court of the county or corporation in which such land, or the greater part of it, lies, for the purposes of ascertaining a just compensation for such land."

Section 1075 provides that when it is intended to apply for such appointment of commissioners, ten days previous notice thereof shall be served on the tenant of the freehold, or his guardian or committee. If there be no such person within the county or corporation, the notice, instead of being thus served, may be published once a week, four successive weeks, in some convenient paper, and posted at the front door of the courthouse of the county or corporation on the first day of the term next preceding the application.

Section 1076 provides that "upon it appearing that such notice has been given, the court shall appoint such commissioners. * * * * *"

The first order of the court in the proceedings for condemnation states that "On motion of the Chesapeake and Western Railroad Company, and it appearing to the court that the above-named defendant" (The Washington and St. Louis Railroad Company) "has been duly served with notice of this motion as by law is required, it is ordered that" certain persons who are appointed commissioners for that purpose shall ascertain the compensation provided for in such cases.

The next order in the cause which was made upon the coming in of the report of the commissioners states that "on motion of

said Chesapeake and Western Railroad Company and G. W. Berlin, counsel for said Washington, Cincinnati and St. Louis Railroad Company, consenting, it is ordered that said report of the commissioners be confirmed and approved,  *   *   *   *" and appoints a commissioner to ascertain to whom the compensation should be paid.

The order of the court declaring that the defendant had "been duly served with notice of this motion as by law is required," is conclusive of the fact that the defendant had notice of the motion, unless there be something in the record which plainly shows that it did not have notice, or the character of the proceeding is such that the facts, upon which the court based its decision that there was notice, must affirmatively appear in the record.

Two notices of the motion which was to be and was made on Monday, the 15th day of July, the first day of the July term, 1895, of the court, are found in the record.   One is dated May 22, 1895, and has upon it the following endorsement: "Legal and timely service of the within notice accepted this 24th day of May, 1895. Washington, Cincinnati and St. Louis Railroad Company, by G. W. Berlin, attorney for said company."

The other is dated June 10, 1895, and to it is attached the certificate of Miller and Snavely, publishers, of Harrisonburg Free Press, stating that the notice had been published once a week for four successive weeks in that paper, beginning with its issue of June 13, 1895, and ending in its issue of July 11, 1895, and the affidavit of John T. Harris, that on the first day of the June term, 1895, of the court, he posted a printed copy of the notice at the front door of the court-house of the county.

Neither of these notices are referred to in the order of the court which declares that legal notice of the motion had been given the defendant.   Nor is there anything in the statute which requires that the facts or evidence upon which the adjudication of notice is based shall appear in the record.

If it were conceded, as is argued, that neither of the notices were sufficient, it does not follow that the defendant did not have legal notice of the motion, for the court may have based its judgment upon evidence in addition to or even independent of the facts disclosed by the record.

In *Moore* v. *Holt*, 10 Gratt., 284, 291, which was a foreign attachment, it was said that "there was no proof to show that the order of publication against the alleged absent defendant had been duly executed as the law requires. The decree, however, states that the order of publication against Joseph Holt had been duly published, and as due publication requires both the insertion of the order in a newspaper for the prescribed period, and the posting of it at the court-house door in due time, the decree must be construed to import that both were done. And it has been decided by this court on several occasions, that where the decree states that publication had been made, it will be sufficient, and this court will not look into the record for the evidence of the fact, citing among other cases, *Craig* v. *Sebrell*, 9 Gratt., 131.

In that case, which was a suit in which there was an absent defendant, the decree recited that the cause was heard on the bill, &c., and the order of publication returned duly executed. On appeal, this court held that "the decree must be regarded as solemnly affirming that there was an order of publication duly taken against the defendant, and that it was duly published and posted as the law directs; otherwise it could in no sense be said to have been duly executed; and the verity of the record upon that point is not to be called into question by any averment or proof to the contrary."

In *Sargeant* v. *The State Bank*, 12 How. 371, Judge Daniel delivering the opinion of the court in a case in which the judgment stated that the decision was pronounced after proper and legal service, said: "The real veritable record informs us that legal and sufficient notice was given to the heirs of Samuel Ser-

geant, but whether by this paper, or in what other mode, except that it was legal and sufficient, we are not told and are not at liberty in this case to indulge in inferences against the verity of the record.  It is a principle well settled, too, in judicial proceedings, that whatever may be the powers of a supreme court, in the exercise of regular appellate jurisdiction, to examine the acts of an inferior court, the proceedings of a court of general and competent jurisdiction cannot be properly impeached and re-examined collaterally by a distinct tribunal, one not sitting in the exercise of appellate power.  To permit the converse of this principle in practice would unsettle nine-tenths of the rights in any community, and lead to infinite confusion and wrong."

The next objection to the introduction of that evidence is, that it does not appear upon the face of the condemnation proceedings that any attempt was made by the plaintiff to purchase the land sought to be condemned.  This was not necessary. Proceedings to condemn land is by motion upon notice.  The rule governing notices is that they are presumed to be the acts of the parties and not of lawyers, and are viewed with great indulgence by the courts.  Formal pleadings are not required in such cases.  If they were, little, if anything, would be gained by such proceedings over the ordinary action at law or suit in chancery.  If the notice be such that the defendant cannot mistake its object it is sufficient. *Supervisors* v. *Dunn*, 27 Gratt., 608; *Union Life Ins. Co.* v. *Pollard*, 94 Va., 146, 153.

The evidence deduced does not ordinarily become a part of the record unless made so by bill of exceptions.  The county court having jurisdiction over this class of cases, and the defendant having had notice of the motion, the presumption is that all the facts necessary to give it jurisdiction in the case appeared.

With respect to powers vested in the county courts, which are purely judicial in their nature, as was said by Judge Staples in delivering the opinion of the court in *Pennybacker* v. *Switzer*, 75 Va., 671, 685, whether exercised according to the course of

the common law or by statute, they are courts of general juris-
diction to the same extent as the circuit courts.   In both in-
stances the presumption arises with respect to the conclusive-
ness of all the proceedings and judgments of the court.   Upon
this subject we refer to the case of *Harvey* v. *Tyler*, 2 Wall.,
328, and *Ballard et als.* v. *Thomas & Ammon*, 19 Gratt., 14.
In the latter case it was held that an order of the county court
laying a levy is an adjudication of the facts necessary to author-
ize the proceeding, and that adjudication cannot be called in
question in any collateral proceeding, however erroneous it may
be.   See also *Lancaster* v. *Wilson*, 27 Gratt., 629; *Hutcheson*,
*&c.*, v. *Priddy*, 12 Gratt., 90; *Ferguson* v. *Teel*, 82 Va., 690;
*Hill* v. *Woodward*, 78 Va., 765; *Applegate* v. *Lexington*, 117
U. S., 255, 270.

The remaining objection to the admissibility of the condem-
nation proceedings in evidence is, that neither the general law
nor the charter of the defendant company by express terms nor
by necessary implication granted to that company authority to
apply to the county court for the condemnation of the property
of the plaintiff.

It is not denied that under some circumstances, unless ex-
pressly prohibited, one railroad company may condemn the land
of another for its purposes, but it is denied that such circum-
stances existed in this case.   It may be that this is true, but that
was one of the questions involved in the condemnation proceed-
ings.

The case of *Alexandria, &c. R. Co.* v. *Alexandria, &c. R. Co.*,
75 Va., 780, is relied on to show that the only jurisdiction which
a county court has in condemnation proceedings is to appoint
commissioners to ascertain and report what compensation and
damages the owner of the property is entitled to receive where
he and the company cannot agree, and to determine the question
of compensation.   The judge delivering the opinion in the case
does so state, but he was also of opinion that the condemnation

proceedings were void upon the further ground that the charter of the condemning company expressly provided that it should in no way interfere with the chartered rights or franchises of any railroad between Alexandria and Washington city, except the right of crossing. This opinion was not the opinion of the court. Judges Staples and Burks concurred in the results, Judge Christian dissented, and Judge Moncure did not sit. That case cannot be regarded as a decision of this court, that in condemnation proceedings the court has no jurisdiction of any other question than the appointment of commissioners and the determination of what will be a just compensation to the landowner.

One of the objects in providing a summary proceeding for the condemnation of land by an internal improvement company where it cannot agree with the owner, or where he is under disability, is to enable it to acquire good title to the land wanted for its purposes, and to proceed with its work upon making payment of the compensation allowed as provided by statute, leaving the parties where there is a controversy to litigate their rights over the fund paid into court without affecting the title to the property which the statute expressly provides shall vest in the company upon paying the compensation allowed in the manner marked out by the statute. Code, secs. 1079, 1083.

The statute does not specifically provide what issues may be raised upon the motion to condemn, but it is utterly unreasonable to say that the defendant must be notified when the motion to condemn his land will be made, and yet when he appears he cannot be heard to show that the plaintiff has no corporate existence, or that it has no authority to condemn the particular property for its use, or that it can only condemn upon certain conditions, which have not been complied with, or under certain circumstances which do not exist. The policy of the law generally is to have all matters arising out of one controversy settled in a single suit, and this ought to be so, especially in a proceeding the effect of which is to take the defendant's land

against his will and invest the plaintiff with a fee-simple title to it. If this be not the case, railroad companies would have no assurance that the steps taken by them to procure rights of way or property wanted for their purposes, would conclude any one, and they would be constantly subject to vexatious litigation.

This view is not only in accordance with the better reason, but is sustained by the weight of authority. See 2 Mills on Eminent Domain (2nd ed.), secs. 388, 389, and 391; *B. & O. R. Co.* v. *P. W. & Ky. R. R. Co.*, 17 W. Va., 844, and cases there cited; *St. Joseph R. R. Co.* v. *Hannibal, &c. R. R. Co.* (Mo., 6 S. W. Rep., 691); *Secombe* v. *R. R. Co.*, 23 Wall., 109, 119; 1 Red. on Railways (5th ed.), 271.

The proceeding in the County Court may have been erroneous, but it was not void. Not being void, the propriety or validity of its judgment can no more be impeached in a collateral proceeding than can the judgment of any other court of general jurisdiction having jurisdiction over the subject matter and the parties.

The condemnation proceedings are therefore conclusive upon the parties, however erroneous they may be, until set aside or reversed in the manner provided by law. *L. & N. R. Co.* v. *Taylor*, 93 Va., 226; *Foster* v. *City of Manchester*, 89 Va., 92; Black on Judgments, sec. 246.

They were not only admissible in evidence, but until set aside by some appropriate proceeding, they were a complete bar to the plaintiff's right of recovery so far as they embraced the lands sued for.

The other propositions of law which the plaintiff insists the court violated in its rulings in admitting and excluding evidence, and in giving and refusing instruction are as follows:

"First. Under the provisions of the act of February 25, 1892, the corporate rights and franchises of the defendant in error were *ipso facto* forfeited, and no act of the State, judicial or otherwise, was necessary to complete the forfeiture. Its right

of way was therefore subject to appropriation by the plaintiff in error in the method prescribed by law.

"Second. That even if it was necessary for the State by some affirmative action to declare the forfeiture effective, nevertheless, the right of way of the defendant in error, if in point of fact the same had been abandoned, rendered the same subject to appropriation by the plaintiff in error, in the method prescribed by law.

"Third. That the property of one railroad, whether a going concern or not, is subject to appropriation by another railroad, provided the same is not needed or its use had been abandoned.

"Fourth. That knowledge on the part of a person or corporation that their real estate is being appropriated by a railroad company, estops them from recovering the *locus in quo* in ejectment, their remedy being by action at law for damages."

If, as we hold, the condemnation proceedings are conclusive of the rights of the parties in this collateral proceeding, and their effect was to invest the plaintiff in error with the fee-simple title to the land embraced by them, the questions involved in the first, second and third of these propositions cannot arise upon the next trial, for those questions could, and if relied on ought to have been raised in the condemnation proceedings, and are concluded by them.

Whether the fourth proposition quoted be the law or not will also be immaterial upon the next trial. For if the effect of the condemnation proceedings was to invest the plaintiff in error with title to the land, it is a bar to the recovery of the defendant in error, and no question of estoppel by conduct can arise.

What has been said disposes of the questions raised by the assignments of error based upon bills of exceptions numbered three, four, five, six, seven, eight, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, and nineteen.

The only other error assigned that it is necessary to consider is as to the manner in which the defendant in error was permitted

to prove its corporate existence, which was put in issue by the pleadings.

The rulings of the court upon that question seem to be fully sustained by the cases of *Grays* v. *Turnpike Co.*, 4 Rand., 578, 580, &c., and *Crump* v. *Mining Company*, 7 Gratt., 352.

The judgment complained of must be reversed, the verdict set aside, and the cause remanded for a new trial, to be had not in conflict with the views expressed in this opinion.

*Reversed.*