# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## POWELL AND ALS. V. BELL'S ADM'R AND ALS.

### DECEMBER 10th, 1885.

JUDGMENT LIENS—*Registry acts—Case at bar.*—In 1855 H. bought of K. a lot of land for $433.33, and paid one-third cash, but took neither deed nor other writing nor possession. Sometime prior to 14th July, 1856, T., as trustee of B., verbally purchased the lot of H. for same price, and paid him what he had paid, and assumed the remaining two-thirds due to K. And by writing, under seal of that date, B. directed her trustee to obtain a conveyance of said lot from K., reserving vendor's lien for the two-thirds still due on the purchase money, and to employ her trust fund in building a house upon it. This T. did, after having first got a written order from H., directing K. to convey the lot as aforesaid. The deed is dated August 1st, 1856, but it was not recorded until 1859. Afterwards, in May, 1857, S. got a judgment against H., and sued to subject the lot to the judgment.

HELD :

    1. T.'s purchase of the lot from H. having been by parol, came not within the registry acts.

    2. T. having paid H. for his entire interest in the lot, and got possession of it before S.'s judgment was obtained, had a valid, equitable title to the lot, and the lot is not subject to the lien of the judgment of S. against H.

    3. The valid, equitable title of T. in the lot was not so merged in the legal title acquired by the subsequent deed of K. to him as to subject the lot to the lien of said judgment.

    4. H. had bought the lot verbally, and had sold it verbally, and been paid back his money, and his vendor had acquired possession of the lot *before* the rendition of the judgment against H., so H. had, when the judgment was obtained, no interest in the lot whereof the judgment lien creditor could avail.

5. The writings, dated 14th July, 1856, and respectively executed by B. and by H. did not constitute the contract of the sale of the lot by H. to T. for B. either separately or together, and did not come within the registry acts.

Appeal from decree of circuit court of Rockbridge county, rendered 18th March, 1885, in the chancery cause of *Bell and als.* v. *Heflin, Haughawont and others.*

The object of the suit was to subject the real estate of the defendants to the lien of a judgment of the county court of Augusta county, against three of the defendants.   By its decree the circuit court ordered a certain house and lot, situate in Staunton, and in the possession of and owned by the heirs of Mrs. Mary A. Bare, deceased, to be sold to satisfy one-half of said judgment, &c.   From this decree those heirs obtained an appeal to this court.

Opinion states the facts.

*White & Gordon* and *Edmund Pendleton,* for the appellants.

*S. H. Letcher,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

At the May term, 1857, of the county court of Augusta county, Samuel H. Bell, Henry Eidson, and Jacob Baylor recovered a judgment against Henry Bare, John M. Heflin, and John W. Haughawont for $500, with interest from May 30th, 1855, and costs.   Henry Bare, the principal debtor, and John M. Heflin resided in the county of Augusta, and John W. Haughawont, in the county of Rockbridge.   On this judgment execution issued in the county of Augusta, and was returned unsatisfied; and another execution issued and sent to the county of Rockbridge, and was also returned unsatisfied.

In March, 1872, said judgment creditors filed their bill in the circuit court of Rockbridge against their said judgment debtors, the declared object of the suit being, as stated in the bill, to subject to the satisfaction of their said judgment certain real estate belonging to the defendant Haughawont, in the county of Rockbridge, it being stated in the bill that there was no property in the county of Augusta liable thereto.

On the 20th of May, 1876, an account was ordered. In obedience to the order of reference, the master reported (at what date does not appear), setting forth the complainants' judgment as amounting to $1,150.74 as of the 1st of October, 1876, and other judgments, amounting in the aggregate to $1,757.47 as of same date, and reporting. also a list of certain lands and town lots belonging to the defendant Haughawont, valued at about $5,000, which were *supposed* to be subject to the lien of said judgments. At the May term, 1877, when no decree had been entered touching the said lands of Haughawont, and when the appellants here were not parties to the suit, a decree was entered therein, directing one of the court's master commissioners to ascertain and report whether there was any property in Augusta county subject to the lien of complainants' judgment, and if so, to report the *fee-simple* and annual value thereof, by whom claimed or held, the state of the title and existing liens. The master returned his report on the 20th of September, 1877, setting forth that he found in the clerk's office of Augusta county, a deed from William Kinney and wife to Nicholas K. Trout, trustee for Mary Ann Bare, wife of Henry Bare, one of the judgment debtors aforesaid, bearing date August 1st, 1856, conveyed, in consideration of $433.33, one-third of which had been paid, a certain lot of land situated near Staunton, * * * containing one and one-fourth acres; that from an endorsement on said deed it appeared that John M. Heflin, one of the said judgment debt-

ors, was the equitable owner of said lot, having purchased it from William Kinney, the said grantor, and had paid one-third of the purchase money, and afterwards directed the legal title to be conveyed as above; that this deed was not fully acknowledged until the 14th day of January, 1858, and not recorded till the 23d day of April, 1859, more than two years after the rendition of the judgment of complainants, and more than one year after the docketing of said judgment; and the commissioner says that "he is advised that under the decision in *McClure* v. *Thistle,* 2 Gratt., said deed is void as against the complainants' judgment; that the fee-simple value of said property was $3,000, and the annual rental value $200, and that the property was owned by Mrs. Mary Ann Bare and family, the widow and descendants of Henry Bare, deceased, the legal title thereto being in the personal representative of Nicholas K. Trout, deceased."

Thus, for the first time, was it suggested that the property, the subject of controversy here, was liable to the judgment of the complainants, the inquiry having been instituted when they were not parties to the suit. On the 17th of May, 1878, some eight months after the coming in of Commissioner Edmondson's said second report, an order was entered in the cause, referring to said report as without exceptions, and directing the complainants in the original bill to file an amended bill, making defendants thereto the heirs-at-law of Mary Ann Bare, deceased, and the administrator of Nicholas K. Trout, deceased, trustee for Mrs. Bare. The amended bill, after much delay, was filed, and in it the complainants asserted the lien of their said judgment on the house and lot in Staunton belonging to the appellants here, the heirs-at-law of said Mary Ann Bare.

In this state of the case, on the 27th day of October, 1879, the said circuit court entered a decree in the cause approving

and confirming the said second report of Commissioner Edmondson, and directing that unless the defendants in the amended bill, the heirs of Mary Ann Bare, deceased, should, within sixty days from the rising of the court, pay to the complainants the sum of $575.37, with interest on $250, part thereof, from the 1st day of October, 1876 (that being the one-half of the judgment of the complainants), the one-half of the costs in the original suit, and the costs of the amended bill, then certain commissioners appointed for the purpose, after giving notice as required by the decree, were directed to make sale of the real estate mentioned in Commissioner Edmondson's second report. Accordingly, the said property was advertised to be sold on the 4th day of February, 1880. Thereupon the heirs of Mrs. Bare presented to the judge of the circuit court of Rockbridge a petition for rehearing and for an injunction to restrain said commissioners from executing said decree for the sale of their property. The injunction was granted. Samuel H. Bell, one of the complainants, having died, his administrator answered said petition, and John W. Haughawont also answered. It is useless to enter into all the averments in the said petition and answers. It is sufficient to say that at the hearing thereon, in March, 1884, the said decree of October 27, 1879, was reversed and annulled on two grounds, stated in the decree of reversal, to-wit: 1st, because it directs a sale of the real estate of the heirs of Mary Ann Bare, when the commissioner's report, on which said decree was based, shows that the rents and profits thereof would pay the debt for which it was decreed to be sold in less than five years; and, 2d, that said decree, before directing either a sale or renting of said real estate, should have directed an account to be taken of the liens on said real estate, and especially of the vendor's lien retained in the deed from Wm. Kinney and wife to Nicholas K. Trout, trustee. And this decree again referred the cause to

Master Commissioner Edmondson, with instructions to take an account of the liens, by judgment or otherwise, and especially of the vendor's lien reserved by Wm. Kinney on the real estate belonging to the heirs of Mary Ann Bare, and also of the title thereto, and report to court; and leave was given to said heirs to answer said amended bill within sixty days.

Said commissioner, in obedience to the order of re-committal, on the 21st of August, 1884, returned his third report, stating that there were no liens on said real estate by judgment paramount to or *pari passu* with the complainants' judgment; but that the vendor's lien retained by Willian Kinney was a subsisting lien, which, as of September 1st, 1884, amounted to $788.64, and was held by John W. Bare, one of the heirs of Mary Ann Bare.

The heirs of Mary Ann Bare answered the amended bill. They say that they cannot deny the recovery of the judgment of complainants against Henry Bare, John W. Haughawont and John M. Heflin as set out in the bill, but deny that said judgment is a lien on the house and lot in Staunton. They further say that the title to the lot on which said house is built was acquired by a legal conveyance, in fee, from Wm. Kinney and wife to Nicholas K. Trout, trustee for their ancestress, Mary Ann Bare, deceased, for the consideration of $433; said conveyance being dated on the 1st day of August, 1856, and was duly acknowledged and delivered to said Nicholas K. Trout, trustee, on the 23d day of August, 1856, and that said lot was greatly improved by the errection of valuable improvements thereon by said Nicholas K. Trout, trustee, with funds and means belonging to said Mary Ann Bare, deceased; and that upon the death of said Mary Ann Bare, the said house and lot descended to the female respondents and their co-defendant, John W. Bare. They deny that John M. Heflin ever had any legal title to said lot, or any title of any kind capable of record-

ation under the statute; or that he ever conveyed to Mary Ann Bare, deceased, or to her trustee, Nicholas K. Trout, any title capable of being recorded under the statute. On the contrary, they say that the only semblance of title to said lot ever held by said Heflin, was under an executory verbal contract for the purchase of same from William Kinney, to whom he had paid one-third of the purchase money; and that long before the complainants recovered their said judgment, the said John M. Heflin, by a like verbal contract, sold all his interest in said lot to Nicholas K. Trout, trustee for said Mary Ann Bare; and they insist that, under the circumstances, the judgment of complainants is not, and never was, a lien on said lot.

In addition to what is said in this answer of the said heirs, it clearly appears from the record that Mrs. Bare was the owner and holder, through her said trustee, of a separate fund, which went to the erection of the valuable improvements on said lot, which, when purchased from Kinney by Heflin, and also when sold by the latter to Trout, trustee for Mrs. Bare, was entirely unimproved, it not even being fenced.

The cause was again brought on and finally heard, as to the defendants, the heirs of Mrs. Bare, on the 18th day of March, 1885, when the court decreed that said heirs pay—1st. To John W. Bare the amount of vendor's lien due him, as reported by the master in his said third report, being $788.64, with interest on $288.88, part thereof, from the 1st day of September, 1884; and (2), to the plaintiffs in the original and amended bill the sum of $575.37, with interest on $250.00, part thereof, from the first day of October, 1876, that being the one-half of the plaintiffs' judgment, the one-half of the plaintiffs' costs in the original suit, and the costs of the amended bill; which costs, so decreed against the heirs of Mary Ann Bare, were ordered to be credited by the plaintiffs' costs in the proceedings for a rehearing of the decree of October

27th, 1879; and in default of payment of said sums within sixty days from the rising of the court, the special commissioners, Edmund Pendleton and S. H. Letcher, who were appointed for the purpose, were directed to make sale of the said house and lot for the purposes of said decree. And without having judicially determined anything in respect to the liability of the lands of the defendant, John W. Haughawont, sought to be subjected by the original bill, that matter was re-committed to the master for further report.

From that decree an appeal was allowed on the application of the heirs-at-law of Mary Ann Bare, the appellants here.

Before proceeding to examine into the main question involved in this controversy, to-wit: whether in any event the house and lot in Staunton, the property of the heirs-at-law of Mary Ann Bare, deceased, is liable to the judgment of complainants in the court below, it is proper to notice briefly some peculiarities of the decree complained of:

1st. The decree directs the payment within sixty days by the heirs of Mary Ann Bare, to John W. Bare, of the amount of vendor's lien due to the latter, when John W. Bare is one of those heirs, thus failing to distingush between him, as the holder and owner of the vendor's lien, and the other heirs. This vendor's lien was retained by Kinney in the conveyance from him to Mrs. Bare's trustee; was by Kinney assigned to D. A. Kayser, on the 1st of January, 1858, and by the latter to said John W. Bare on the 10th day of July, 1863, both of which assignments, as shown by the record, were made in good faith and for value. It is an obvious fact, recognized by the decree, that the vendor's lien thus held by said John W. Bare is paramount to all other claims; yet the decree makes no exception as to John W. Bare, and, in effect, makes him jointly with the others liable for the amount decreed in his favor. Plainly, this is wrong. The decree, in this respect, should

have been against the heirs of Mary Ann Bare, other than said John W. Bare.

2nd. The master reported the judgment of the complainants a lien on said house and lot, but subordinate to the vendor's lien aforesaid, and the decree confirmed said report, yet decreed in favor of the complainants for only half of their judgment, and required the defendants, the heirs of Mrs. Bare, and appellants here, to pay half the costs of the original suit, when they were not made parties to the original bill, and when there was no averment or prayer therein in anywise affecting them. This is all wrong. Clearly, if the judgment of complainants was a lien at all, it was a lien for the full amount thereof, there being no proof of non-liability as to the other half, no intimation that any part of the judgment had been paid, nor any reason assigned for decreeing for the satisfaction of only one-half thereof. And, as to the costs of the original suit, there could be no justice in decreeing any part thereof against the heirs of Mrs. Bare, when neither she nor they were parties to the original bill, and were not even referred to therein.

3d. The original bill, to which the heirs of Mrs. Bare were not parties, sought only to subject the lands of the defendant therein, John W. Haughawont; there had been a reference to and report by the master of certain lands belonging to said Haughawont as liable to the complainants' judgment; and, without ascertaining whether the lands of said Haughawont were primarily or secondarily liable to said judgment, and if so, to what extent, the court below proceeded to enter the decree complained of, subjecting to said judgment the house and lot belonging to the heirs of Mrs. Bare. In this respect the decree was manifestly premature and erroneous, as all of these matters should have been first ascertained.

This brings us to the consideration of the main question, which, stripped of all extraneous and irrelevant matter, may

be thus stated : Can a judgment against John M. Heflin, one of three judgment debtors, be enforced against real estate to which he never held the legal title or any other title capable of recordation, but only an equitable claim under a parol verbal contract of purchase, which he had parted with, by a like parol contract, for a valuable consideration, long prior to the rendition of the judgment against him? As we have seen, the lot of land in question was purchased by a parol contract by John M. Heflin from William Kinney, about the 1st of November, 1855, Heflin paying to Kinney $144.44 in cash, that being one-third of the purchase price, but received no deed or other written evidence of the contract, and did not take actual possession. About a year and a half later S. H. Bell and others recovered their judgment against Henry Bare, John W. Haughawont and John M. Heflin. Sometime prior to the 14th day of July, 1856, and prior to the recovery of said judgment against him, Heflin, by a parol contract, for value, sold said lot to Nicholas K. Trout, trustee for Mary Ann Bare, two-thirds of the purchase money, due from Heflin to Kinney, remaining unpaid. This purchase by Mrs. Bare's trustee from Heflin came about in this way: Nicholas K. Trout, as trustee for Mrs. Bare, held a note or bond on Heflin for $———. In part discharge of this debt Heflin proposed to sell his interest in the lot bought of Kinney to Mrs. Bare's said trustee. The proposal was communicated to Mrs. Bare, and she approving it, gave the following direction in writing to her trustee:

"To Nicholas K. Trout, trustee, in a deed from Henry Bare, for my benefit, dated May 19th, 1855: You are hereby directed to invest so much of the money due from John M. Heflin, on the land conveyed to you by said trust, as you may collect, in a certain lot, with improvements, near the produce depot of the Central Railroad, purchased of Wm. Kinney; or take a

conveyance of said property, subject to the vendor's lien, or for such interest as the said Heflin may have in it, according to the provisions of said trust; and pay any money due me, under your control, towards the building of the house, etc.; and this shall be your sufficient authority. Witness my hand and seal this 14th day of July, 1856.

"MARY A. BARE, [Seal]."

On the same day John M. Heflin wrote:

" *To Wm. Kinney, Esq.:*

"This is to authorize you to convey to Nicholas K. Trout, trustee of Mary Ann Bare, wife of Henry Bare, the lots I purchased of you through your agent, David S. Young, Esq.; and which property is to be held by said Trout agreeably to the provisions of the deed constituting him such trustee, and the price is to be in part consideration of the bond on me conveyed to said Trout, in trust for said Mary Ann Bare.

"Witness my hand and seal this 14th day of July, 1856.

"JOHN M. HEFLIN, [Seal]."

Accordingly Wm. Kinney and Rebecca F., his wife, on the 1st day of August, 1856, conveyed the lot in question to Nicholas K. Trout, trustee of Mary Ann Bare, the deed reciting on its face that the consideration was $433; that one-third thereof had been paid, and retaining a lien for the two-thirds remaining unpaid. And this deed was acknowledged and delivered on the 23d day of August, 1856, prior to the recovery of the judgment sought to be enforced, though it was not recorded until after the recovery of said judgment.

The evidence in the cause makes it clear beyond all cavil that these transactions between William Kinney and John M. Heflin, and between the latter and Nicholas K. Trout, trustee,

with the sanction of Mrs. Bare, were all had in the utmost good faith, and founded upon valuable consideration; that the separate trust fund belonging to Mrs. Bare went to the improvement of the lot thus purchased for her; that her said trustee, for and on her behalf, had, in good faith and for a valuable consideration, prior to the rendition of the appellees' said judgment, acquired every vestige of interest or claim of John M. Heflin in and to the lot in question; and that Mrs. Bare, with her family, took possession, lived on and enjoyed the property until her death, when the same passed by descent to her heirs-at-law, the appellants. It is, therefore, absolutely certain, that at the time of the recovery of the appellees' judgment, there remained in Heflin no estate or interest in the lot in question to which the lien of the judgment could attach. The statute (Code 1873, ch. 182, § 6), makes every judgment for money rendered in this State, theretofore or thereafter, against any person, a lien on all the real estate of or to which such person shall be possessed or entitled, at or after the date of such judgment, &c. It certainly cannot be said that Heflin was either possessed or entitled to the real estate in question, or that he was entitled to any interest therein, either at or after the recovery of the judgment in this case. Hence, the settled doctrine of this court is, "that the creditor can never get by his judgment more than his debtor really owns." See *Borst* v. *Nalle and others*, 28 Gratt. 433, and subsequent decisions which need not be cited. Nor can it make any difference in this case that the deed from Kinney and wife to Mrs. Bare's trustee was not recorded until after the recovery of the judgment of the appellees. Heflin, by a mere verbal contract, became the purchaser of this lot, and by a like verbal contract he parted with all his claim and interest before the judgment was recorded against him; and having so parted with his interest,

he, in writing, directed Kinney to convey to Trout, trustee for Mrs. Bare. In this way Heflin, who had paid only one-third of the purchase money, and whose interest was measured by the amount paid, divested himself of all his claim and interest before the judgment was recovered.

But it is insisted for the appellees that Heflin's instructions in writing to Kinney to convey to Mrs. Bare's trustee is a contract in writing such as is contemplated by §§ 4 and 5, ch. 118, Code 1849, and should have been recorded in order to protect Mrs. Bare, the beneficial purchaser, and those claiming under her. Obviously the paper possesses none of the elements of a contract, and was no more capable of recordation under the statute than was the verbal contract between Kinney and Heflin. The writing is not even addressed to Mary Ann Bare, or her trustee, but is by Heflin addressed to his vendor, Kinney, and authorizes him to convey to Mrs. Bare's trustee ; thus clearly indicating, as is shown to have been the fact, that there was a prior verbal contract (at what precise time does not appear) between Heflin and Nicholas K. Trout, trustee for Mrs. Bare. Being a mere parol verbal contract, it is not only not required by the statute to be recorded for the protection of creditors and subsequent purchasers, but was incapable of recordation according to the plain meaning of the statute. Besides a deed proper, the statute authorizes nothing to be recorded but "a contract in *writing* made in respect of real estate or goods and chattels in consideration of marriage or for the conveyance or sale of real estate, or a term therein of more than five years."

In *Floyd* v. *Harding*, 28 Gratt. 401, after a careful examination into the objects and scope of our registry acts, and review of all the authorities, it was settled that said acts have no application to parol contracts for land. If the contention for the appellees in this case were upheld, it would be to hold

the anomalous doctrine that a judgement creditor can subject to the lien of his judgment real estate or some interest therein not owned by the debtor at or after the date of the recovery of the judgment; and such is the effect of the decree of the court below, which is clearly erroneous, and must be reversed, and a decree entered here dismissing the amended bill as to the defendants therein, the appellants here.

DECREE REVERSED.