WHEELING BRIDGE & TERMINAL RY. CO. et al. v. REYMANN BREWING CO.

(Circuit Court of Appeals, Fourth Circuit.   November 1, 1898.)

No. 261.

**1. RAILROADS—FORECLOSURE SUITS—POWER OF COURT TO ADJUST LIENS.**

Upon a petition of intervention, in a suit to foreclose a railroad mortgage, by one claiming a prior vendor's lien on a portion of the right of way of the road, the court may, if it sustains the claim for a lien, in order to prevent a dismemberment of the road by a sale of such portion, order the amount found due the claimant paid by the receiver from the earnings of the road, or, if necessary, from the proceeds of the entire road

when sold, or, as a last resort, it may decree the separate sale of the portion covered by the lien.

2. STATUTE OF FRAUDS—PAROL CONTRACT FOR RIGHT OF WAY—PART PERFORM-
ANCE.
A contract for right of way for a railroad, though in parol, may be enforced by compelling payment of the consideration, where the railroad has taken possession thereunder and constructed its road.

3. EQUITY—LACHES—MERE LAPSE OF TIME.
Where the right of way across property was donated to a railroad company on condition that it should make good any injuries to the buildings of the donor which might be injured by the location or building of the road, and the money value of such injuries was afterwards fixed by agreement between the parties, a delay of seven years after the building of the road, and until the company had been placed in the hands of a receiver, before taking legal proceedings to enforce a lien for such damages, is not such laches as will bar a recovery by the donor, there being no equitable grounds of estoppel.

4. FEDERAL COURTS—FOLLOWING STATE DECISIONS—LACHES.
By analogy to the rule in regard to limitations, federal courts should follow the decisions of a state court as to laches affecting rights relating to the title or possession of realty therein.[1]

Appeal from the Circuit Court of the United States for the District of West Virginia.

William P. Hubbard, for appellants.

Henry M. Russell, for appellee.

Before SIMONTON, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

SIMONTON, Circuit Judge. This case comes up on appeal from the circuit court of the United States for the district of West Virginia. It arose from an intervention filed by the Reymann Brewing Company in the cause of the Washington Trust Company against the Wheeling Bridge & Terminal Railway Company, and seeks to establish a preferred claim against the property in the hands of the defendant company. This claim is for two separate items,—one of $2,500, the value of certain property alleged to have been taken by the railway company in constructing its track; the other, of $600, for failure in fulfilling its contract, while building its track, to pave a certain alley. The Reymann Brewing Company was the owner of certain real property lying in a suburb of the city of Wheeling, called "Manchester." On this property it conducted its business,—the manufacture, brewing, and selling of beer. Upon it were the buildings erected and used for these purposes. This realty consisted of four parcels, separated by streets or alleys from one another. The whole tract is bounded on the east by Warren street, on the west by Wheeling creek, on the north by Seventeenth street, or the city of Wheeling, and on the south by certain property of the heirs of Pebler. The four parcels are numbered 1, 2, 3, 4; No. 1 being the south parcel, and the others following consecutively, making No. 4 the north parcel.

In the year 1889 Judge Cochran, the president of Wheeling &

---

[1] As to the following of state decisions by the federal courts, see note to Wilson v. Perrin, 11 C. C. A. 71, and supplementary note to Hill v. Hite, 29 C. C. A. 553.

Harrisburg Railroad, had in contemplation the building of a railroad for terminal purposes of the Wheeling Bridge & Terminal Railroad Company. In order to build this road, it was necessary to have the right of way over and through the lands of the brewing company. In order to promote his enterprise, and to advance his proposal to capitalists, he approached the president of the brewing company, and obtained permission for this right of way. The definite location of this right of way was not fixed, except that it was to be along the creek bank, outside of (that is to say, to the west of) the buildings of the brewing company, so as not to interfere with that company. The president of the company said that this general grant of the right of way was "merely that they should have a good showing when they come East and make the necessary arrangements." When the construction of the railroad actually begun, it was found inconvenient and expensive to go too near the bank of Wheeling creek, and the tracks were laid more to the eastward, and instead of one track, as was at first suggested, several tracks were laid. This change of location was accomplished without any seeming inconvenience to the brewing company, or interference with its buildings on tracts 1, 2, and 3, and the work progressed very well. But on tract 4 the change of location of the track, and certain other changes made necessary by a construction of a bridge over Seventeenth street,—changes made for the convenience both of the railroad company and of the brewing company,—the track was brought so near to an old ice house of the brewing company, and in use by it, as to make it of no practical utility to the brewing company. At first the new location for the track passed through the boiler house attached to the ice house, and this had to be moved. Then the track itself necessitated raising the chutes through which ice was carried to the ice house to such a height that the ice was all broken when delivered, so the old ice house was abandoned by the brewing company, and has since become a ruin, practically having disappeared. This raises the chief issue in this case. The petition intervening gives this account of the transaction, after stating the necessity for a change in the location of the railroad from that first contemplated, and that as a consequence the tracks were brought across parcel No. 4 at such a place and in such manner as to prevent altogether the further use of the ice house and its machinery for the purposes for which they were intended:

"It was thereupon agreed between the said Wheeling Bridge & Terminal Railway Company and your petitioner that the said railway company might have its right of way according to the new location, and might construct its tracks across the said four parcels of land according to the said new location, and in consideration thereof the said railway company agreed that it would at its expense remove the boiler house of your petitioner upon the said parcel numbered one to a point on the said parcel further west than it had theretofore stood, so as to permit the tracks of the railway company to run to the east of it; that it would make certain changes in the bridge owned by the said city of Wheeling, the eastern end of which rested upon the said continuation of said Seventeenth street; that it would, at its expense, pave the alley aforesaid, which lies between the said second and third parcels of your petitioner's land (this alley being a public alley, but having property of your petitioner on both sides of it, and being especially used by your petitioner for access to the creek); that it would cross the last-mentioned alley with its tracks by a bridge having under it a sufficient clearance to

permit the passage of teams; and that it would pay to your petitioner the sum of twenty-five hundred dollars in money. As a part of the said agree-'ment, it was further agreed that your petitioner should convey to said railway company the said ice house on the said parcel numbered four, and the land on which the said ice house was situated, and that with that land it should grant to the said railway company a right of way for persons, horses, and vehicles between that land and Warren street, so that access could be had 'to the said land from the last-mentioned street." That it has not paid the $2,500, and has not paved the alley.

It estimates the latter at $600, and its money demand is for the aggregate of these sums, with interest.

There was only one written agreement between the parties. That is as follows:

"This memorandum witnesseth that the Reymann Brewing Company of Wheeling, West Virginia, in consideration of one dollar paid by the Wheeling and Harrisburg Railway Company of West Virginia hereby grants and conveys to said railway company, its successors and assigns, a right of way for its railway over and along said company's lands situate on the easterly bank of Wheeling creek, in said city of Wheeling, Ohio county, in said state; said right of way to include the strip of land on and along the east bank of said creek from the buildings of said Reymann Brewing Company to the bed of the creek. This grant is accepted by said railway company with the agreement on its part that it shall, in constructing its tracks over said lands, preserve the facilities for storing ice in said company's ice houses, or, if any changes are required therein, they shall be made at the cost of the railway company, and in such wise as not to be less useful and convenient to the brewing company; and any change made in the Seventeenth street bridge shall be such as shall not injure the access to the brewing property, and shall conform to the city ordinance granting a right of way over streets. &c., to said railway company. It is further stipulated that in constructing said road and tracks over said lands the foundations to buildings and to the brick stack shall not be interfered with, and all proper precautions shall be taken to protect said brewery property from injury. Said brewing company agrees to execute such other conveyance as may be necessary to assure to said railway company the right of way hereby intended to be described. Witness the corporate seal of said brewing company, and the attestation of its president, this 25th day of July, 1888, together with the seal and attestation of said railway company by its president."

All that was done afterwards was in parol, and is testified to by the president and by the manager of the brewing company. The railway was completed in 1889. The petition was filed on December 9, 1895. Judge Cochran, who was president of the railway company at the time of this construction, died after this intervention was filed.

The receiver, in his answer to the petition, set up the laches on the part of the brewing company. He also pleaded the statute of frauds to the parol agreements. He denies that there was ever any agreement to pay the $2,500 for the ice house, or to pave the alley, as alleged, or any other agreement than that set out in writing as above. He avers that the building of the railroad was greatly for the interest of the brewing company, in putting its goods to market, and that this was the real consideration for the grant of the right of way.

On the coming in of the answer, the court referred the cause to a master. He made his report—the finding is in favor of the petitioner—on both claims. He also finds that the brewing company has a vendor's lien on the right of way, and also upon the land on which

the ice house stood; and he gives to the railway company, subject to this lien, this land on which the ice house stood, and a full right of way from it to Warren street. The court approved the findings and conclusions of the master, and ordered the receiver to pay the full sum of money, with interest, in default of which the sections of the road on the land of petitioner must be sold. An appeal was allowed on assignments of error. The decisive questions made in the assignments of error are: Laches; the statute of frauds; the right of the court to require the payment of this judgment out of the assets of an insolvent company, in preference to the mortgage debt; the right of the court to order a sale of a part of the road to pay the judgment, instead of directing the receiver to pay it from the earnings of the road; the right of the court, sitting in equity, to render a money judgment. We will take these questions up in their inverse order.

This proceeding is by intervention in a proceeding in equity. It is brought to enforce a lien on realty in the hands of the court of equity, and in the charge of its receiver. Two questions were involved in it: First, was there any sum of money due to the intervener? Next, was it secured by lien, and, if so, how is this lien to be enforced? Proceeding to the adjudication of these questions according to the established procedure of a court of equity, a reference was to a master, who reported the facts bearing upon both questions. The determination of the first question was essential to the adjudication on the other. The right of the court to ascertain the amount of money due, in the mode adopted, cannot be questioned. It is constantly exercised in the enforcement of the lien by mortgage. The lien of the vendor is substantially a mortgage. Lewis v. Hawkins, 23 Wall. 127. It will be observed that this is not the ordinary claim against an insolvent railroad company, praying payment thereof out of funds in the hands of, and under the control of, the receiver. It is the assertion of a lien superior to the lien under which the receiver was appointed, and in every respect paramount to him. In this respect the case at bar differs entirely from Gue v. Canal Co., 24 How. 263. How the lien, if it be established, shall be enforced is a question for the court. As it would cover a very important part of the road, and its control by the receiver is essential to the keeping the road a going concern, the court may well conclude that the whole property is interested in preserving it, and so the general fund could be used in extinguishing the lien. If there be funds on hand, the result of earnings, they could be used. If the property is so insolvent as to produce no earnings, provision may be made for the extinguishment of the lien out of the proceeds of sale, so as give a good title to the purchaser. The sale of the part of the road covered by the lien would be resorted to only in the last extremity. But, if reduced to this necessity, the court could order it. Lewis, Em. Dom. § 620; Finnell v. Railway Co. (Ky.) 36 S. W. 553; Varner v. Railway Co., 55 Iowa, 677, 8 N. W. 634; Hobbs v. Trust Co., 30 U. S. App. 393, 15 C. C. A. 604, and 68 Fed. 618. It is not a question of a preferential claim, in the sense of a claim having superior equities to the mortgage debt. It is the payment of the claim which outranks the mortgage, independent of it, unaffected by the proceedings for foreclosure.

It is earnestly contended that the case is one for specific performance, and that the statute of frauds operates as a bar to it. But the case as made is the grant of the right of way by the brewing company to the railroad company, the occupation of it by the latter, and its constant and daily use. For this the railroad company was to pay the money claimed. This is a case in which one party has nothing to do but to execute a deed, and the other to pay the money. Had the contract been in parol, for the exchange of lands, and one party had put the other in possession, a specific performance would have been decreed. Bigelow v. Armes, 108 U. S. 10, 1 Sup. Ct. 83. The language of the supreme court in Railway Co. v. McAlpine, 129 U. S., at page 312, 9 Sup. Ct., at page 288, is appropriate to this case:

"The taking possession of (that is, exercising control and dominion over) the property was referable entirely to the contract. It was an act done with respect to the property by the consent of the vendor, which would not have been done if there had been no contract. This consent gave to the act, which otherwise would have been tortious, its character as one of part performance."

But it is by no means clear that the case of the intervener rests on a parol contract or contracts. The memorandum of 25th July, 1888, giving the right of way over the lands of the brewing company, has this acceptance of the grant by the railway company:

"This grant is accepted by said railroad company with the agreement on its part that it shall, in constructing its tracks over said lands, preserve the facilities for storing ice in said company's ice houses, or, if any changes are required therein, they shall be made at the cost of the railroad company, and in such wise as not to be less useful and convenient to the brewing company."

The memorandum also, in its general provisions, says:

"All proper precautions shall be taken to protect the brewery property from injury."

Evidently this memorandum contemplated changes in the location of the tracks. The prominent idea was the right of way over the lands. There were changes in the precise location of the tracks on parcels 1, 2, and 3. These are not denied. When the result of these changes appeared on parcel No. 4, it was discovered that it made the ice house on that parcel useless, and destroyed the facilities of getting ice into the house, and from the creek. The railway company could have made the changes required thereby. But the evidence shows that these would have been costly and troublesome, so far as the ice house was concerned; and, instead of making them, the company preferred to pay the money, $2,500, and it agreed to make a necessary change for facilitating the getting of ice from the creek by paving the alley, at a cost of $600. The case of the intervener rests on this written agreement. The parol evidence is as to the measure of damages.

It is also insisted that the intervener has been guilty of laches, and so has lost its right. Now, the case, as made, is the entry upon and the use of the right of way by the railway company, under a contract that, in constructing its tracks over the land, it shall preserve the facilities for storing ice in said company's ice houses, or, if any changes

are required, then they shall be made at the cost of the railway company, and in such wise as not to be less useful and convenient to the brewing company; that in putting in the tracks it became evident that the old ice houses would be made useless, and the road on the creek bank destroyed; that, to supply their place, $2,500 be paid for the ice house, and the alley paved, at a cost of $600. This was the price to be paid for the right of way, and the brewing company had a lien therefor. Lewis v. Hawkins, 23 Wall. 127, likens possession subject to a vendor's lien to possession subject to a mortgage. The possession is not adverse. Hardin v. Boyd, 113 U. S. 756, 5 Sup. Ct. 771. And this is the law in West Virginia. Poe v. Paxton, 26 W. Va. 607; Norman v. Bennett, 32 W. Va. 614, 9 S. E. 914; Steenrod v. Railway Co., 27 W. Va. 1. The federal courts follow the decisions and law of the state as to the statute of limitations (Dibble v. Land Co., 163 U. S. 65, 16 Sup. Ct. 939), and, by analogy, should follow them as to laches. This is a question affecting the title and possession of real property, in which federal courts follow the state courts. Bucher v. Railroad Co., 125 U. S. 583, 8 Sup. Ct. 974. Apart from this, on general principles, there has been no such laches as will deprive the petitioner of his rights. The legal title was in the brewing company. The railway company had an equity. The latter had quite as much interest in perfecting the transaction as the former had. The transaction took place in 1888. The railway company went into the hands of a receiver in 1893. This intervention was filed in 1895. The mortgage was dated 1889. "The length of time during which the party neglects the assertion of his rights, which must pass in order to show laches, varies with the peculiar circumstances of each case, and is not, like the statute of limitations, subject to an arbitrary rule. It is an equitable defense, controlled by equitable considerations; and the lapse of time must be so great, and the relations of the defendant to these rights such, that it would be inequitable to prevent the plaintiff now to assert them." Halstead v. Grinnan, 152 U. S. 413, 14 Sup. Ct. 641. So in Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873: "Laches does not, like limitation, grow out of the mere passage of time. It is founded on the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relation of the property or the parties." Nothing of this kind exists here. The brewing company generously granted a right of way to the railway company through its lands; stipulating only that the railway company should not injure its facilities, and, if it made changes, these should be done at the cost of the railway company, and in such wise as not to be less useful and convenient to the brewing company. The railway company accepted the grant with this stipulation, and went into and remains in possession of the rights of way. It did make changes which destroyed facilities for storing ice. The money value of these changes has been fixed. The inequity would be in leaving the railway company in full possession, and depriving the brewing company of all indemnity.

The decree below provides for the execution of a deed by the brewing company. This company assigns no error in that respect. The

judgment of this court is that the cause be remanded to the circuit court, with instructions to take such proceedings therein as will conform to this opinion.