# Richmond.

## FULKERSON'S ADM'X., &C. V. TAYLOR AND OTHERS.

### JANUARY 14, 1904.

1. JUDGMENTS—*Docketing—Indexing.*—Where the name of a judgment debtor is entered in the index of the judgment lien docket, giving reference to page of the docket, and immediately under his name the word "same" is written; also giving reference to page of docket, this is a sufficient compliance as to second named judgment with the provisions of section 3561 of the Code requiring judgments to be indexed, although it is safer for clerks to comply with the letter of the statute. The object of the statute requiring judgments to be docketed and indexed is to apprise third persons who exercise ordinary care and prudence of the existence and character of the judgment.

2. EXECUTIONS—*Issuance—Collateral Attack.*—An execution issued in contravention of the agreement of the parties is not void, but voidable. Until avoided it is a valid execution, and cannot be assailed by plea or proof in a chancery suit to enforce the judgment on which it issued. The chancery suit is a collateral suit.

3. JUDGMENTS—*Purchaser—Parol Contract—Imperfect Equitable Title.*— A purchaser of land under a parol contract who has been let into possession and paid a part of the purchase price is not entitled to priority for the payments made over a subsequent judgment against his vendor. In order for a purchaser under a contract which is not required to be recorded, to be protected against subsequent judgments against his vendor, he must, before the date of such judgment, have become invested with a perfect equitable title.

4. PURCHASER—*Unrecorded Deed—Judgment Creditor—Code, Section 2472.*—The provisions of section 2472 of the Code, which protects a subsequent purchaser under an unrecorded title to the extent of payments made when he receives notice of a prior unrecorded deed or writing and gives him a lien on the property purchased

for so much of the purchase money as he had paid before notice, has no application to judgment creditors.

5. IMPROVEMENTS—*Defective Title—Notice.*—A purchaser cannot claim that he put improvements upon land in good faith, believing that he had good title when the records disclose a defective title. Means of knowledge with the duty of using them is equivalent to knowledge itself.

6. IMPROVEMENTS—*Railroads—Defective Title.*—Railroads, and other *quasi* public corporations may acquire perfect title to lands needed for their purposes, and transfer any controversy as to the title to the lands, or as to encumbrances thereon, to the damages assessed, upon complying with the provisions of sections 1079 and 1083 of the Code, but if they undertake to acquire title by purchase from the owner they are governed by the same principles as private individuals in claiming compensation for the value of improvements put upon lands of which they are deprived.

7. JUDGMENTS—*Liens on Lands Acquired by Railroads—Extent of Liability.*—Where a railroad company has constructed a part of its road bed upon lands which are subject to the liens of judgments against persons from whom it purchased the lands, such lands, with the improvements thereon, may be sold to satisfy such liens.

Appeal from a decree of the Circuit Court of Lee county in a suit in chancery, wherein the appellee, Eliza A. Taylor, was the complainant, and the appellants and others were the defendants.

*Reversed.*

The opinion states the case.

*C. T. Duncan* and *B. H. Sewell,* for the appellant.

*R. T. Irvine* and *L. T. Hyatt,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This case has been appealed twice. The decision of the court in the former appeal is reported in 100 Va. 426-437, 41 S. E. 863, and the proceedings had in the case prior to that time are set out in the opinion of the court.

The first assignment of error upon this appeal is that the court erred in holding that J. M. Wheeler, Sr., at the time he purchased and paid for the 113.80 and 51 acre tracts of land in the proceedings mentioned, had actual notice of the judgment of C. E. Baylor against L. D. Fulkerson.

The appellees assign as cross-error, under rule IX., that the court erred in not holding that Wheeler had constructive notice, even if he did not have actual notice, of that judgment. If this be true, it will be unnecessary to consider the question of actual notice.

Upon the former appeal, it appeared that the judgment had been properly docketed upon the judgment lien docket, as provided by section 3560 of the Code of 1887, but it did not appear that the docketing had been indexed as required by section 3561. The case was remanded to the Circuit Court without passing upon that question. After the case went back, the deposition of the clerk of the County Court of Lee county was taken, and with his deposition was filed extracts from the index of the judgment lien docket. One of these extracts is as follows:

"Fulkerson L. D. Cur. & et al. ads. Emma Harber, p. 168.
"Same ads. A. L. Pridemore, p. 168.
"Same ads. Rosetta Harber, p. 168.
"Same ads. Bays Children, p. 168.
"Same ads. Chas. E. Baylor, p. 168."

The Circuit Court was of opinion that the use of the word "same" in the index in the place of the full name of the judgment debtor was not a compliance with the provisions of section 3561 of the Code of 1887, which requires that every judgment shall be, as soon as it is docketed, indexed by the clerk in the name of each defendant, and shall not be regarded as docketed as to any defendant in whose name it is not so indexed.

It is true, as contended, that the name of L. D. Fulkerson, the judgment debtor, is not written out in the index to the docket in which the Baylor judgment is docketed, yet the word "same" follows the name of L. D. Fulkerson in such connection that it could refer to and mean nothing else than "L. D. Fulkerson." If it does not mean that, it is without any signification whatever. "Same" is no one's name. If not the usual, it is a very common, method of indexing both recorded deeds and docketed judgments. To hold that such a mode of indexing is invalid would unsettle many titles, and might result in much injustice. The object of the provision of the Code for docketing and indexing abstracts of judgments is to apprise third persons—as, for instance, intending purchasers—of the existence and character of the judgment if they exercise ordinary care and intelligence. *Cooke* v. *Avery,* 147 U. S. 377, 13 Sup. Ct. 346, 37 L. Ed. 209. In the case cited, which involved the construction of a statute similar to the one under consideration, the Supreme Court of the United States said: "The only ground upon which this abstract and index could be held insufficient was that the names of the plaintiffs were not given in full in either abstract or index. Was this omission fatal to the lien? The Circuit Court did not think so, and we concur in that view. *Willis* v. *Smith,* 66 Tex. 31 (17 S. W. 247). 'The object of the statute is not to incumber the register with full information, but to excite inquiry and indicate the source of full information.' It appears to us that the source of full information was so indicated in this instance that no reasonably prudent or cautious inquirer could go astray." To hold that the index to the docketed judgment in this case is sufficient, it is not necessary for us to go as far as did the Supreme Court in the case cited. It is always safest, however, for clerks, in the performance of their duties in indexing recorded writings and docketed judgments, to comply with the letter of the statute imposing such duties upon them.

The refusal of the court to quash the execution which had been issued upon the Baylor judgment in violation of the agreement of the parties is assigned as error.

The administratrix of L. D. Fulkerson, in an answer filed on the 8th day of June, 1901, set up the plea of the statute of limitations to the judgment of Baylor, upon the ground that more than ten years had elapsed between the date of its rendition and the institution of this suit, and that no valid execution had ever issued thereon. She filed with her answer a notice served upon the personal representative of the judgment creditor, that she would on the 7th day of that month move the Circuit Court to quash the execution in question upon the ground that it was prematurely issued. Upon the same day upon which the answer was filed, a decree was entered in this cause overruling a motion made by the administrator of L. D. Fulkerson. What that motion was is not disclosed by the record. If it was the motion to quash the execution, it does not appear to have been made on the day named in the notice, and besides, could not have been legally made in this case.

Conceding that the execution was improperly issued, it was not void, but only voidable. Until it is avoided it must be regarded as a valid execution, and could not be avoided by plea or proof in this, a collateral suit. *Fulkerson* v. *Taylor, supra.*

In *Beale's Adm'r* v. *Botetourt Justices,* 10 Gratt. 278, the execution issued more than a year and a day from the date of the decree, without any proceeding by way of *scire faicias* or otherwise to authorize the same. In that case it was held—though the conclusion may not have been necessary to a decision of the case—that the validity of the execution could not be attacked in that, a collateral proceeding. The reasoning, however, of Judge Moncure in that case, and the authorities cited by him, sustain the doctrine that an execution issued improperly, which is voidable, but not void, upon a judgment or decree rendered in one case, cannot be attacked in another case in which such judgment

is sought to be enforced, but that if such execution is to be avoided, it must be done in some independent proceeding instituted for that purpose.

The appellees also assign as cross-error that the Circuit Court erred in decreeing that the sum paid by J. M. Wheeler on the purchase price of the 113 and 51 acre tracts of land prior to the rendition of the Baylor judgment should be a lien on these tracts of land prior to the Baylor judgment.

If it be true, as insisted by counsel for Wheeler's heirs, that his contract of purchase from Fulkerson was in parol; that Wheeler had been put in possession under it, and paid part of the purchase price before the Baylor judgment was rendered and docketed—it does not, to the extent of such payment, give them priority over the lien of the Baylor judgment. In order for a purchaser, under a contract which is not required to be recorded, to be protected as to subsequent judgments against his vendor, he must, before the date of such judgment, have become invested with a perfect equitable title. *Withers* v. *Carter,* 4 Gratt. 407, 412, 50 Am. Dec. 78; *Floyd etc.* v. *Harding,* 28 Gratt. 401, 414, 416; *March, Price & Co.* v. *Chambers,* 30 Gratt. at page 303; *Long* v. *Hagerstown Agricultural Co.,* 30 Gratt. 665; *Brown* v. *Butler,* 87 Va. 621, 13 S. E. 71; *Powell* v. *Bell's Adm'r,* 81 Va. 222. Wheeler did not have at that time a perfect equitable title, as he had only paid a part of the purchase price.

Prior to the Code of 1887, a subsequent purchaser under a contract not required to be recorded was not protected against a prior unrecorded conveyance unless he had paid the whole purchase price before he received notice of the unrecorded conveyance. 4 Minor's Inst. 968, and cases there cited. Now, under section 2472 of that Code, such a purchaser is protected to the extent of the payments made when he receives notice of the prior unrecorded deed or writing, and has a lien on the property purchased for so much of the purchase money as he had paid before

notice. But this highly equitable provision has no application to judgment creditors. The word "writing," in that section, refers to contracts in writing by which a party acquires some interest in, not to judgments by which a party acquires a mere lien upon, land.

The action of the court in decreeing a sale of the improvements made by the Louisville & Nashville Railroad Company on the Vanoy Railroad strip, and especially without compensating the railroad company for said improvements, is assigned as error.

The Vanoy strip of land conveyed to the railroad company, and upon which it had constructed its improvements, it is conceded by the assignment of error, was liable for the liens for which it was decreed to be sold, but the contention is that the improvements placed thereon by the railroad company are not liable. This contention is based upon two grounds: First, that the railroad company made its improvements in good faith, believing that it had good title to the strip of land; second, that the same principles of law do not apply to allowances for improvements when made by a public improvement company or corporation like a railroad as apply when made by private individuals.

As to the first ground, that the railroad company made its improvements in good faith, believing that it had good title to the land: This contention is not sustained by the facts. The railroad company, when it purchased the land and made its improvements thereon, knew, or ought to have known, that it was not acquiring a good title. An examination of the records would have shown this, and that judgments against Fulkerson, theretofore or thereafter rendered, in the then condition of the title, would bind the land in its hands. Under these circumstances, it is immaterial whether or not it had actual notice of the infirmity of the title. It had the means of knowledge, and the means of knowledge with the duty of using them is equiva-

lent to knowledge itself. *Jameson* v. *Rixey,* 94 Va. 342-348, 26 S. E. 861, 64 Am. St. Rep. 726, and cases cited.

As to the second ground, that a railroad or other *quasi* public corporation is not governed by the same principles as are private individuals, in claiming for compensation for the value of improvements: Code 1887, sections 1079, 1083, provide how such corporations may acquire perfect title to lands needed for their purposes, and transfer any controversy as to the title to the lands, or as to incumbrances upon them, to the damages assessed in the condemnation proceedings. *C. & W. Railroad Co.* v. *W. C. & St. L. Ry. Co.,* 99 Va. 715, 723, 40 S. E. 20. Where such a corporation attempts to acquire title to lands by purchase from the occupant or supposed owner, we know of no rule of law which exempts it from the ordinary principles of law applicable to private individuals purchasing under like circumstances. A corporation, except where it is otherwise provided in its charter, expressly or by clear implication, in the acquisition and use of its property, the exercise of its powers, and the transaction of its business, stands upon the same footing as private individuals. See *R. & F. R. Co.* v. *City of Richmond,* 26 Gratt. 83 ; *Bank* v. *Billings,* 4 Pet. 514, 7 L. Ed. 939 ; *Hope* v. *N. & W. R. Co.,* 79 Va. 283.

It is further insisted that, even if the railroad company is not entitled to compensation for the value of the improvements it placed upon the land, the court erred in decreeing a sale of the strip of land with the improvements thereon. A number of cases are cited to sustain this contention. Conceding that it is true, as these cases, or some of them, at least, hold, that detached portions of the roadbed of a railroad cannot be sold to satisfy judgment or other liens upon its property for debts of the company, it does not follow that, where a railroad company has constructed a part of its roadbed upon lands which are subject to liens of judgments against the persons from whom it acquired the lands such lands cannot be sold to satisfy such liens. The

lien creditor has no claim against the railroad company. It can pay the debt, if it chooses, and relieve the property of the lien, but the creditor cannot compel it to do so. Where a railroad is in the hands of a receiver of the court, as was the case of *Wheeling Bridge & Terminal Ry. Co.* v. *Reymann Brewing Co.,* 90 Fed. 189, 32 C. C. A. 571, cited and much relied on by appellant's counsel, the court might, as was suggested in that case, direct the liens to be paid out of the earnings of the railroad, or it might, if the railroad was insolvent, direct a sale of the entire property of the railroad company, and a satisfaction of the liens out of the proceeds of sale. But where the railroad company is solvent and not in the hands of a receiver, as in the case at bar, how can the court control its earnings, or order a sale of its entire property to satisfy a debt which it does not owe ?

In the case of *Hope* v. *N. & W. R. Co., supra,* where the same arguments of public policy and inconvenience were urged as in this case against interference with the operations of a railroad company by depriving it of a part of its roadbed, it was said by Judge Lewis, in delivering the opinion of the court, "that questions of inconvenience discussed by counsel cannot be considered by the court. The fact is that the defendant unlawfully withholds possession of the plaintiff's property, to which it has acquired no title, and for which he has received no compensation. It is competent, however, for the company, if it cannot acquire the land by private agreement, to condemn it; and thus it is hardly probable that public inconvenience will result from a reversal of the judgment complained of. But be that as it may, the plaintiff has not shown himself entitled to recover, and the judgment must be reversed." If a plaintiff in an action of unlawful detainer is entitled to a writ of possession, as was adjudged in that case, for a detached portion of the bed of the railroad, clearly the judgment lien creditor in this case can subject the detached portion of the railroad upon which he has a lien to its payment by a sale thereof.

We are of opinion that the Circuit Court did not err in decreeing a sale of said strip of land, including the improvements thereon. The Baylor judgment, having, as we have seen, been properly docketed, is a prior lien upon all the lands directed to be sold by the decree appealed from, including said railroad strip, and is also a lien upon the strip of land purchased by the said railroad company from J. M. Wheeler, together with its improvements, and the Circuit Court erred in not so holding.

The decree appealed from must be reversed in so far as it is in conflict with the views expressed in this opinion, and affirmed in other respects, and the cause will be remanded to the Circuit Court for further proceedings to be had in accordance with law, and not in conflict with this opinion.

*Reversed.*