## CHARLESTON.

JAMES O'KEEFE v. THE ECLIPSE POCAHONTAS COAL COM-
PANY *et al.*

Submitted November 14, 1922.    Decided December 5, 1922.

1.   CORPORATIONS—*General Rule That Officer of Corporation
Cannot Contract on Behalf of Corporation With Himself
Inapplicable Where He Purchased Judgment for Protection
of Corporation.*

The general rule that an officer or agent of a corporation
can not contract on behalf of the corporation with himself as
an individual, is inapplicable to the facts in this case. (p. 525).

2.   JUDGMENT—*Bona Fide Purchase of Judgment Against Cor-
poration by Officer Held Not Payment.*

Where an officer or agent of a corporation with his own
money purchases in good ·faith and without fraudulent design
a judgment or decree against the corporation and four of its
promoting stockholders and takes an assignment thereof to
himself, in order to protect himself and .the company, such
purchase and assignment does not discharge the judgment or·
constitute a payment thereof by the company or other judg-
ment debtors; it remains alive and enforceable with all at-
tendant rights belonging to the judgment creditor. (p. 527).

3.   CORPORATIONS—*Stockholder Transferring Stock to Holder of
Judgment against Him and Corporation ·to Escape Liability
has no Cause of Action Against Purchaser, for Proceeds of
its Sale, Where He Did Not Exercise Option to Repurchase.*

If after such purchase of the judgment, one of the judg-
ment debtors, in order to relieve himself from all liability on
the judgment and to obtain a release of his property from the
execution levied thereon, sells and assigns to such purchaser
all his stock in the corporation and takes from him a receipt

92 W. Va.

and a release in full of the judgment and of the execution on his property, he has thereafter no cause of action against such purchaser for any part of the proceeds of the sale of such stock, although at the time of his contract he was given the option to repurchase said stock within a specified time at a stiplated price, but of which option he did not avail himself. (p. 528).

(LIVELY, JUDGE, absent.)

Error to Circuit Court, McDowell County.

Suit by James O'Keefe against The Eclipse Pocahontas Coal Company and others. From a judgment for plaintiff, defendants bring error.

*Affirmed in part; Reversed in part.*

*Russell S. Ritz and Sanders, Crockett & Fox,* for plaintiffs in error.

*J. J. Divine, Bernard McClaugherty* and *D. J. F. Strother,* for defendant in error.

MILLER, JUDGE:

This suit is the outgrowth of the suit of *J. S. Wallace vs. The Eclipse Pocahontas Coal Company* and others, heard here upon an appeal by the plaintiff from the decree of the circuit court giving him partial relief, but denying him the full relief prayed for, which he decided he was entitled to, reversing the decree below and remanding the cause for further proceedings to be had in accordance with our decree. The opinion delivered here will be found reported in 83 W. Va. 321, to which reference may be made for a statement of the nature of the case and the issues presented and decided.

In brief, that suit was to secure specific performance of a contract between Wallace and the defendants, Perkins, Weller, Griffith and O'Keefe, promoters and organizers of The Eclipse Pocahontas Coal Company for the purchase of a lease for coal alleged to belong to Wallace, and which had been transferred by them to said company.

Instead of the decree below, our conclusion was to reverse that decree and to adjudge in accordance with the terms

of the contract, that the court below ascertain the value of the plant and property of the defendant corporation fully equipped with one operation as indicated, and that if the capital stock authorized and unissued or issued and outstanding and held by the said Perkins, Weller, Griffith and O'Keefe was sufficient to represent in value a one-fifth interest therein, to which we determined the said Wallace was entitled under the contract, such number of shares should be issued or transferred to him on the books of the corporation by it or said promoting stockholders, and if not, then the plaintiff should be decreed against the corporation and said promoting stockholders jointly the value of the plaintiff's interest in the property of the corporation so equipped and ascertained by the court, with interest thereon from the time when the plaintiff should have received said shares or the value thereof.

The final decree of the court, upon the remand of the cause was in the alternative either that the defendant The Eclipse Pocahontas Coal Company and the defendant Perkins, Weller, Griffith and O'Keefe should turn over to Wallace one hundred and ninety shares of the stock of the corporation within a specified time, or that they pay to him the sum of $20,-103.58, the ascertained value thereof, with interest and the costs of the suit.

The stock not being forthcoming within the time specified by the decree, the evidence shows Wallace sued out an execution against the corporation and the individual defendants against whom the decree was pronounced, which was levied not only upon the plant and property of the corporation, but also upon the property of the individual debtors, and in the case of the defendant O'Keefe, the plaintiff in the present case, process of garnishment was also issued and the wages due him from the Norfolk and Western Railway Company were thereby attached.

To relieve the stress of circumstances thus created, the defendant Stover, president and general manager of the defendant corporation, not succeeding in getting the co-defendants to contribute a sum sufficient to pay off the amount of said decree, as proposed by him raised the money upon the

note of another corporation owned or controlled by him, on his individual endorsement, paid to Wallace the amount of the decree, and continued to hold the same and the execution thereon against the property of the excution debtors.

To relieve them and their property, the plaintiff here and his co-defendants in the decree, as plaintiff swears, assigned and turned over to Stover their shares of stock in the corporation, which in the case of O'Keefe amounted to seventy shares of the par value of seven thousand dollars, with the understanding that within a certain time stipulated they might redeem the same by paying to Stover $3,000.00 each, which said Stover determined would pay the proportionate amounts which the said four individual defendants agreed they should contribute to the payment of said decree, Stover's proposal further being that the company should pay the residue of the decree, then amounting to something over nine thousand dollars.

Stover swears that in accordance with this proposal the plaintiff O'Keefe first proposed to surrender fifty shares of his stock, but later yielded to Stover's demand for seventy shares or all his holdings in the company, which he assigned to Stover and took from him finally a release of the decree, and did not afterwards redeem the stock from Stover. Subsequently Stover sold the stock so obtained from O'Keefe for $8,750.00, or at the rate of $125.00 per share; and the object of the present suit was to recover that sum from defendant company and Stover.

On the trial below, after all the evidence had been introduced, the defendants interposed a demurrer thereto, and there was a conditional verdict by the jury, subject to the law applicable to the facts, fixing the plantiff's damages at $8,750.00, the amount realized by Stover from the sale of said seventy shares of stock.

The judgment on the demurrer now complained of by The Eclipse Pocahontas Coal Company was that the demurrer of the defendant Stover be sustained but overruled as to it, and thereon that the plaintiff recover from said company, not the full amount of the verdict, but instead the sum of $4,020, 71, with interest thereon from January 31, 1920, and costs.

In overruling defendant's motion to set aside the verdict of the jury and to grant it a new trial, the judgment was that said motion be overruled, but that instead of setting aside the verdict amounting to $8,750.00, it be reduced to the sum of $4,020.71, with interest as adjudged.

To get a proper view of the issues involved, the pleadings should perhaps be considered. The original declaration contained the common counts without bill of particulars, and a special count. Before the trial, however, plaintiff was permitted to add two additional special counts. The theory of the first count was that on the organization of The Eclipse Pocahontas Coal Company the defendant Stover became a stockholder, took part in the organization and was elected president and general manager, and took full control thereof; that upon the transfer to it of said lease, said corporation agreed to assume and pay all liabilities of the corporation including the liability to said Wallace; but that as soon as Stover obtained control of the company, he repudiated said contract with Wallace. And it is further alleged that after Wallace obtained his decree against said company, Perkins, Weller, Griffith and O'Keefe, Stover purchased the same and caused execution thereon to be sued out and levied upon the property of the plaintiff, and that plaintiff in order to relieve his property and prevent it from being sold thereunder, was required to pay to Stover a large sum of money, to-wit, $10,000.00.

The theories of the two additional special counts were substantially alike and in part the same as the first count. But in addition the first of these two averred that upon the institution of the suit of Wallace against said company and the promoting shareholders, said company by its president reaffirmed its said promises and obligations, and agreed that it would take full charge of said suit on behalf of all defendants, pay all expenses, and hold plaintiff and his codefendants harmless, but that disregarding its said promises, said company and said Stover had entered into an agreement and understanding to cheat and defraud plaintiff and to avoid its obligations and promises, and in furtherance thereof it was arranged that the decree of Wallace should be acquired

in the name of Stover, but for the benefit of said company, and that by means thereof plaintiff should be compelled to pay Stover for the benefit of the company the large sum of money aforesaid; that pursuant to said plan and scheme, Stover purchased said judgment in his name and immediately thereafter had execution issued thereon, and thereby compelled plaintiff, who was ignorant of the true facts in regard thereto, in order to save his property from sale under said execution, to pay to Stover the sum of money demanded; that said purchase was for the benefit of said company; that by the purchase thereof said judgment became satisfied, and no execution thereon should have been issued; and that by reason of the fraud practiced upon plaintiff, it became the duty of the defendants to repay him the money wrongfully obtained from him, which, though often requested, they had declined to do, to his damage in the sum sued for.

The additional matter of the last count is like the second, except that it omits the averments of fraud and conspiracy to defraud the plaintiff by the purchase of said judgment by Stover.

The defendants'. joint and several pleas on which issue was joined, were non-assumpsit and a special plea marked No. 3; and the defendant Stover individually tendered and filed special plea No. 2. The latter was a plea of the statute of frauds, to the effect that the alleged promise and undertakings on his part were for the debt, default and misdoings of another, which not being in writing signed by him or by his agent, were not binding on him, etc. Special plea No. 3, the joint and several plea of both defendants, was in the nature of a plea in estoppel, to the effect that plaintiff and his co-defendants in the Wallace case were estopped by their respective answers and by their testimony therein, denying that in fact there was any such contract as Wallace alleged, or any contract entered into by them with him, whereby the latter was to have any interest in the property and stock of the said company; and that plaintiff was concluded and estopped in this case from affirming anything to the contrary. General replies were made to each of said special pleas, including the plea of non-assumpsit, and issues were joined thereon.

On the question of fraud involved in the Wallace suit, reference to the record in that case and to the opinion delivered here on appeal, will show that no fraud was imputed to the four promoting stockholders in the making of the contract with Wallace. They no doubt intended to carry out their contract in good faith. The fraud arose in the organization of the coal company afterwards, participated in by all the organizing stockholders, including Stover not made a party to Wallace's suit, in undertaking to resolute Wallace out of his contract and to deprive him of any interest or of lesser interest than we decided his contract entitled him to. Stover was as guilty of that transaction as anyone, perhaps more so, for he was president and managing agent of the corporation; and if he had been a party to that suit, he would no doubt have been included among those against whom the decree was pronounced; in effect he was so included, because the decree went against the company also, which affected him as the largest stockholder. Stover knew of the Wallace claim from the beginning. He was in no way mislead thereby; he could, with the notice he had, have easily ascertained Wallace's claim, if he had pursued the notice he had. He was not therefore an innocent purchaser of the stock in the company with any equities against the company or his associates. And notice to him and the other defendants in the Wallace case was notice to the defendant company, as we distinctly held in that case. So there could have been no estoppel as between the codefendants precluding the plaintiff O'Keefe from pleading the promises and understandings upon the part of the defendant company or of Stover, either at the time of the organization of the coal company, or afterwards when Wallace brought his suit, if the facts were as alleged.

The first proposition affirmed and relied on by counsel for plaintiff in error for reversal, is that the fraud against Wallace was that of the four promoting stockholders including O'Keefe, and that one of these could not, by himself or by agreement with Stover, cast upon the company the burden of the Wallace contract, on the principle that an officer or agent of a corporation can not contract on behalf of the

corporation with himself as an individual, and that a director is disqualified to be counted as a part of a quorum and from voting as a member of the board in authorizing a contract with himself, and that as to Stover, president and general manager, he by virtue of his office had no power in that behalf not especially conferred by the directors. The authority cited is 14 A. C. J. pages 117 and 93.

Admitting this legal proposition, we think it is of little importance, for there is no evidence justifying the concluson that the company actually agreed with defendant and others to assume the obligation incurred to Wallace, except the bare fact of accepting the lease, not directly from Wallace, but from the coal company with which Wallace had dealt therefor. There is nothing in the minutes of the meetings of stockholders or directors evidencing any such contract, either at the organization of the company or afterwards, and after Wallace instituted his suit, except the bare fact that counsel was employed to defend that suit. The burden was upon the plaintiff to prove the contract as alleged. And even if the company was legally liable to Wallace as decreed, this was not an adjudication as between the company and the promoting stockholders, of the equities between them and the company.

Nor is there any evidence in the case justifying the conclusion of court or jury that any conspiracy existed between the defendant company and Stover, to defraud or exact money unlawfully or wrongfully from plaintiff. Stover was a stranger to the record in the Wallace case, and was not bound by the decree. He had a duty as president to protect the company and its property, not only in his own interest, but in the interest of plaintiff and others as stockholders. The company was without funds to pay off the decree and relieve its property from the execution, and the plaintiff had no money, as he admits, to meet and pay the decree or his proportionate share thereof. Stover, after appealing to plaintiff and his codefendants for help, failed. He then raised the money individually, paid Wallace and took an assignment of the decree to himself personally for his protection. What was there in law or equity to deny him

this right? His purchase of the decree was not payment by the defendant company, assuming that it was primarily liable therefor. So that the authorities cited for the proposition that payment by the one personally liable or by a joint debtor or co-surety constitutes payment and discharges the judgment or decree, notably 23 Cyc. 1477, 1495, and *Plattsmouth First National Bank* v. *Gibbon,* 84 N. W. 259, are inapplicable.

Stover, though standing in the position of a stranger to the judgment, was not a mere volunteer. His relationship to the company as president imposed upon him some duty and right to protect it and its stockholders. But there was no more obligation upon him to pay the decree personally than there was upon any other stockholder or director. Where one standing in such relationship to a corporation, or where a co-debtor or co-surety pays the creditor and takes an assignment of the debt and lien, he becomes subrogated to all the rights of the creditor and may keep the judgment and lien alive and enforce it for his protection. *Neely* v. *Jones,* 16 W. Va. 625; 15 R. C. L. 780, §234; *Nelson* v. *Webster,* (Neb.), 68 L. R. A. 513, and note; *Bush* v. *Wadsworth,* 60 Mich. 255; *Redington* v. *Cornwell,* 90 Cal. 49; *American Bonding Company* v. *Mechanics' Bank,* 97 Md. 598, 99 Am. St. Rep. 466, and note; *Gatewood* v. *Gatewood,* 75 Va. 407. In the case last cited the court distinguishes the case of one who discharges a mortgage and takes an assignment thereof and that of one who pays off a mortgage simply to protect his own interest. Judge Staples says: "Assignment is the act of the parties, and depends generally upon intention." In *Bush* v. *Wadsworth, supra,* payment of the debt was made by the president of the corporation under circumstances and for purposes very similar to those involved here; and it was held that his payment did not discharge the debt, nor change his equities. In *Lidderdale* v. *Robinson,* 2 Brock. 159, Fed. Case No. 8337, affirmed in 12 Wheat, 594, Chief Justice Marshall held that where a person has paid money for which others were responsible, the equitable claim which such payment gives him on those who were so responsible shall be clothed with the legal garb with which the contract he has discharged was invested.

So that there can be no doubt as to the status of Stover as assignee of the Wallace decree, a status specifically created by contract. When contracting with O'Keefe thereon he stood in the place of Wallace. He had the right of the judgment creditor and had the right to deal with O'Keefe as such. He could have accepted payment in money from him as proposed and released him from all liability on the decree, or do as he did finally do, take an assignment of O'Keefe's stock in payment and release O'Keefe from the judgment. O'Keefe having elected to assign his stock to Stover and obtain a full acquittal of the debt and a release of his property from the lien of the execution, upon what principle of law or equity, no fraud having been shown, can O'Keefe recover from Stover or the company the proceeds of the sale of that stock, or any part of it?

Assuming that the defendant company was primarily liable, and that the four promoting stockholders stood in the relationship of sureties, how can these facts, if true, change or affect the contractual relations between Stover and O'Keefe? The primary liability of the company imposed a burden upon all stockholders, and of course reduced the actual value of the stock pro tanto; and if the stock, as then supposed, was valueless on the market, Stover had only the physical assets of the company to look to as security for his payment to Wallace. Stover, in the beginning, proposed to the four promoting stockholders rendered liable by the decree in favor of Wallace, to take their stock and allow them within the time stipulated to redeem the same upon payment to him of the stipulated sum of $3,000.00 each. One, perhaps all of them except O'Keefe, availed themselves of this option. O'Keefe declined. And even after O'Keefe's assignment to Stover, the latter reaffirmed this proposition and expressed his intention, if the unexpected happened, to do the equitable thing by all of them; but in the face of O'Keefe's evidence of the original agreement, does this voluntary statement, not a part of the actual contract and never accepted, furnish the basis of any liability on the part of Stover to pay O'Keefe any part of the proceeds of the sale of the stock so assigned to him in full discharge of all liability of O'Keefe on the

decree? If the transaction had been an assignment by O'Keefe to Stover of his stock as collateral security, and Stover had in any way obligated himself to account to O'Keefe for the proceeds of the sale, his case would be quite different. Stover already held all rights against the company, and the assignment by O'Keefe of his stock added nothing of value to the security Stover already had. The fact testified to by both is that at the time of the transaction neither party attached any value to the stock. Stover's contract in taking O'Keefe's stock and releasing him from the decree and attachment was one of hazard, and manifestly it is only because Stover succeeded in disposing of the stock at a profit beyond O'Keefe's share of the liability, that the latter seeks to take advantage of that fact as the basis for his presenct suit. On this proposition, let his own evidence in chief speak: "Q. Now, another thing, Mr. O'Keefe. Mr. Stover advised you that you could take this stock back and pay him $3,000.00, didn't he? A. Yes." He further testified that that sum was the amount which Stover had determined to get out of him as his proportion of the decree; and after this said: "Q. And at the same time agreed with you that within a certain time you could take the stock back and pay him three thousand dollars? A. No. Q. Why didn't he? A. I didn't want to have anything more to do with the Eclipse Pocahontas Coal Company; not a damned thing. Q. The stock was worthless? A. Yes, sir, I had found that out. Q. Worthless now and was then? A. It wasn't at certain times. It wasn't when Stover got rid of it. Q. And you didn't want to have anything more to do with the damned thing? A. That's my sentiments exactly. Q. That's what you said? A. That's what I meant.

Being unable to find any legal basis in pleading or proof upon which to sustain the judgment, it becomes unnecessary to consider the question of fraud presented by counsel as grounds for denying plaintiff relief.

Our conclusion is that the law on the defendants' demurrer to the evidence is for both defendants, and that said demurrer should be sustained. And the judgment here is that the judgment below in favor of the said Stover be affirmed, but

reversed as to the plaintiff in error, and that the plaintiff take nothing by his suit, and that The Eclipse Pocahontas Coal Company recover its costs incurred here and in the circuit court in this behalf expended.

*Affirmed in part; Reversed in part.*