GREENBRIER VALLEY BANK *v.* T. H. HOLT *et al.*

(No. 7577)

Submitted November 1, 1933.   Decided November 28, 1933.

*Richardson & Kemper,* and *John R. Pendleton,* for appellant.

*Dice & Easley,* and *Brown, Jackson & Knight,* for appellee.

MAXWELL, PRESIDENT:

This is a chancery suit to enforce the lien of a judgment against the real esate of T. H. Holt.   From a decree upholding the lien and referring the cause to a commissioner in chancery to ascertain the real estate of Holt and to determine the liens binding the same and their priorities, Holt has appealed.

July 28, 1919, T. H. Holt purchased of R. E. L. Holt, J. E. Woodson and J. A. Viquesney fifty shares of stock of Gwen-

dolyn Coal Company, for which he executed his note for $5,-000.00 payable to Floyd Teter. The note was endorsed by R. E. L. Holt, Woodson, Viquesney, Teter and one A. C. Bolton and discounted at the Citizens National Bank of Belington. The note not being paid at maturity, the bank obtained judgment on the same against T. H. Holt, R. E. L. Holt and Woodson in the circuit court of Mercer County May 12, 1920. The amount of the judgment was paid to the bank in the summer of 1921 by R. E. L. Holt, Woodson and Viquesney. On the 13th of August, 1921, the day following the final payments on the judgment, the bank assigned the judgment to Woodson. July 29, 1925, Woodson caused to be issued on said judgment an execution which was returned by the sheriff endorsed ''No property found''. January 16, 1930, Woodson assigned the judgment to the Bank of Renick, and it assigned to the Greenbrier Valley Bank April 20, 1930. On the 8th of May, 1930, the last named assignee, plaintiff herein, caused execution to be issued on the judgment. This execution likewise was returned with an endorsement of *nulla bona*. The suit before us was instituted May 7, 1932.

Almost twelve years elapsed from the date of the judgment to the date of the institution of the suit. The vitality of a judgment is limited by statute to ten years. Code 1931, 38-3-18. But the period of its virility may be extended by the issuance of executions thereon. Code, *idem*. What is the situation under the facts stated? Was there a lien on the real estate of T. H. Holt by reason of the said judgment when this suit was instituted? This is affirmed by the plaintiff and denied by Holt.

The note of T. H. Holt for $5,000.00 of July 28, 1919, was negotiable, and, under our statute, the payment of such instrument by a party secondarily liable does not discharge the same. Code 1931, 46-8-3. This statute is invoked by the plaintiff. But we are not here dealing with the note; it is the judgment alone which must be considered. The note became merged in the judgment. ''The cause of action, though it may be examined to aid in interpreting the judgment, can never again become the basis of a suit between the same parties. It has lost its vitality; it has expended its force and effect. All its power to sustain rights and enforce liabilities

has terminated in the judgment or decree. It 'is drowned in the judgment', and must henceforth be regarded as *functus officio*." 2 Freeman on Judgments (5th Ed.), p. 1166. In agreement: 15 Ruling Case Law, p. 792; 34 Corpus Juris, p. 752; *Beazley* v. *Sims,* 81 Va. 644.

> "A surety in a judgment can never issue an execution against the principal debtor without the consent of the execution creditor, when he has not paid the debt; and although having paid such a debt the surety is always subrogated in equity to all the rights of the creditor against the principal debtor, it does not follow that he may at law sue out an execution for the debt which he has paid off until he shall have proceded by motion in the way provided by the statute." 2 Barton's Law Practice (2d Ed.), p. 783.

Our counterpart of the Virginia statute referred to by the author is Code 1931, 45-1-4. It provides that where one secondarily liable has discharged a debt of his principal, he may by motion in a court having jurisdiction obtain judgment against the principal for the amount paid with interest and five per centum damages. In addition to such statutory right, there is available to such person the benefits of the equitable doctrine of subrogation. So, the rights of one discharging a debt for which he is not primarily liable are in no wise overlooked in either law or equity. Other statements of the proposition dealt with in Barton's Law Practice, *supra,* follow:

> "It is a general rule that the payment of a joint debt by one of the joint debtors is a discharge of it as to all." 21 Ruling Case Law, page 114.
>
> "Where a surety pays a judgment recovered against himself and his principal, he thereby satisfies it, and reduces himself to the situation of a simple contract creditor of the principal; but if he takes an assignment of the judgment to a stranger, and does not intend to satisfy it, the judgment will not be extinguished by the payment. Where a judgment is joint, against two defendants, both are regarded as principals, unless by proof *aliunde* one is shown to be a surety, and where one of them pays the whole

amount of the judgment, he is not therefor entitled to an execution, for use against his co-defendant, unless he himself has been judicially determined to be only a surety." 2 Black on Judgments (2d Ed.), p. 1470.

In a note to *Nelson* v. *Webster* (Neb.), 68 L. R. A. 513, at page 567, the annotator states:

"It is undoubtedly the general rule that when a surety has paid a judgment he cannot proceed to reimburse himself by an execution thereon against the principal. The judgment being extinguished at law, such an execution is void, and any sale of property made in virtue of it is null."

Many cases are there cited. See also, to same effect, annotation to *Phelps* v. *Scott*, (Mo.) 71 A. L. R. 290, at 300. The holdings in the *Nelson* and *Phelps* cases, however, are not in accord with the general rule stated in the annotations.

The case most nearly in point, on its facts, is *Grizzle* v. *Fletcher*, (Va.) 105 S. E. 457. A judgment was obtained by E. S. Smith against Walter Fletcher and J. L. Grizzle. Grizzle was surety for Fletcher on the debt which was the basis of the judgment. Grizzle paid the judgment and took an assignment. Then he caused execution to issue on the judgment in the name of Smith against Fletcher. In quashing the execution, the court held:

"The payment of a judgment by any one of the judgment debtors extinguishes the judgment at law, and a creditor may not sell a judgment to one of the judgment debtors so as to keep it alive at law."

The court said:

"The payment of a judgment by any one of the judgment debtors extinguishes the judgment at law. It is a union of debtor and creditor in the same person, and this operates to discharge the debt. A person cannot buy his own debt without extinguishing it. Of course, the creditor may sell the judgment to a third person, but not to one of the judgment debtors so as to keep it alive at law. It is true that a judgment paid by a surety thereon will be kept

> alive by a court of equity for the benefit of the surety,
> but this arises out of the doctrine of subrogation,
> which is unknown to the common law. If a surety
> who has paid a debt, in whole or in part, wishes to
> subject the personal property of his principal by
> writ of fieri facias, he should proceed under what is
> now section 5777 of the Code, which gives him the
> right to recover from the principal the amount he
> has paid, with interest from the time of payment and
> 5 per cent. damages on said amount. He cannot pro-
> ceed in the manner undertaken in this case. The judg-
> ment being satisfied at law, no valid execution can be
> issued thereon.''

Though we have no adjudication of this proposition in West
Virginia, there is a very pertinent comment in *Reinhard* v.
*Baker,* 13 W. Va. 805, at page 811: ''If the fact stated in the
notice existed, which we must in the absence of any of the
evidence presume was proved at the trial, to-wit: that the
judgment had been satisfied before the execution issued, it is
difficult to conceive, how it could thereafter be regarded in a
court of law, as still in force and as justifying an execution to
be issued thereon in favor of one of the defendants in the
judgment.'' The discussion in 1 Freeman on Executions (3d
Ed.), page 52, is pertinent:

> ''When satisfied, the judgment has fully accom-
> plished its mission, and the preponderance of author-
> ity is in favor of disregarding as absolutely void all
> proceedings taken subsequently to the satisfaction.
> The satisfaction of a judgment, as a matter of course,
> must terminate the period when execution can prop-
> erly issue; it must equally follow, as a matter of
> course, that the subsequent issue of execution can,
> as to the plaintiff and all persons acting in con-
> cert with him and having notice of the satisfaction,
> afford no justification for issuing the writ, nor for
> any act done under its authority.''

*Grizzle* v. *Fletcher, supra,* was decided in 1920. Since that
time the Virginia statute has been changed. It now author-
izes assignment of a judgment to a person secondarily liable
for the original debt and who has discharged the judgment.
Virginia Code 1930, sec. 5777. But at the time of said de-
cision, the Virginia statute, Code of Virginia 1919, sec. 5777,

was the same as our present statute, Code 1931, 45-1-4. We deem that case sound exposition of the law of Virginia of that date, and an accurate guide for the determination of the law of this state today.

In support of its proposition that the executions of July 29, 1925, and May 8, 1930, respectively, were not void but merely voidable and therefore had the effect of keeping the judgment alive, plaintiff relies on the cases of *Beale* v. *Botetourt Justices,* (Va.) 10 Gratt. 278, and *Fulkerson* v. *Taylor,* 100 Va. 426, 41 S. E. 863; *id.,* 102 Va. 314, 46 S. E. 309. In the first case an execution had been issued subsequent to the time within which it could legally be issued without the prior issuance of a *scire facias,* and in the second an execution was issued in violation of an agreement between the debtor and creditor that no execution should issue within a specified time. In each case it was held that the execution was voidable merely and that no motion to quash having been made, the execution had the effect of keeping the judgment alive. But note the basic distinction between those cases and the instant case. In each of them the decretal judgment was subsisting when the execution was issued; here the judgment was *functus officio* because it had been paid.

Plaintiff relies on a statement in the opinion of *O'Keefe* v. *Coal Co.,* 92 W. Va. 519, at page 527, 115 S. E. 579, 582: "Where one standing in such relationship (president and general manager who personally paid a judgment against it for its protection) to a corporation, or where a co-debtor or co-surety pays the creditor and takes an assignment of the debt and lien, he becomes subrogated to all the rights of the creditor and may keep the judgment and lien alive and enforce it for his protection"—citing *Neely* v. *Jones,* 16 W. Va. 625, and certain extra-state authorities. The statement so far as it pertained to "co-debtor or co-surety", though sound in its reference to subrogated rights, is not well grounded wherein it implies that a person who has paid a judgment against him and others may keep it alive by execution. *Neely* v. *Jones* does not sustain it. That is an equity case wherein equity principles are discussed and applied.

In support of the view that one, who, secondarily liable on a debt, pays a judgment which has been rendered against

him and his principal, may cause execution to be issued against the principal and thus preserve the judgment, there are cited on behalf of the plaintiff, 2 Freeman on Judgments (5th Ed.), sec. 1131, *Nelson* v. *Webster* (Neb.), 100 N. W. 411, 68 L. R. A. 513, and other cases. Though these authorities are, of course, entitled to great respect, we are not persuaded by them. In equity there is subrogation for the benefit of the surety, but we are impressed, on authorities cited and for reasons stated, that at law a paid judgment has become of no force whatsoever and will not sustain an execution for the benefit of the surety.

We are therefore of opinion that the plaintiff cannot maintain this suit. We reverse the decree of the trial chancellor and dismiss the bill.

*Reversed and rendered.*